NATIONAL SOFT DRINK
ASSOCIATION, Appellant,

v.

John R. BLOCK, Secretary, Department
of Agriculture, et al.

No. 80–1751.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 3, 1983.

Decided Nov. 15, 1983.

As Amended Nov. 30, 1983.

George M. Burditt, Chicago, Ill., with whom Eugene M. Pfeifer, Rockville, Md., was on brief for appellant.

Marc Richman, Atty., Dept. of Justice, Washington, D.C., for appellees.

Alice Daniel, Asst. Atty. Gen., Charles F.C. Ruff, U.S. Atty., Washington, D.C., at the time brief was filed, Anthony J. Steinmeyer and Catherine A. Ribnick, Attys., Dept. of Justice, Washington, D.C., were on brief for appellees.

David C. Vladeck, Washington, D.C., entered an appearance for appellees.

David R. Ford, Washington, D.C., was on the brief for National Automatic Merchandising Association, amicus curiae, urging reversal. John R. Keys, Jr., Washington, D.C., also entered an appearance for amicus curiae.

Before WILKEY and BORK, Circuit Judges, and McNICHOLS,* Senior District

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

Judge, United States District Court for the District of Idaho.

Opinion for the Court filed by Senior District Judge RAY McNICHOLS.

Dissenting opinion filed by Circuit Judge WILKEY.

RAY McNICHOLS, Senior District Judge:

This appeal challenges certain regulations promulgated by the Secretary of Agriculture (the Secretary). The regulations prohibit the sale of soda water (soda pop), water ices, chewing gum, and certain candies, throughout the public schools where Federally subsidized breakfast and lunch programs are authorized. The regulations prohibit the sale of these competing goods until after the last lunch meal of the day. Appellant is a national trade organization representing producers and sellers of soft drinks who seek to overturn the regulations on substantive and procedural grounds.

For nearly forty years Congress has been legitimately concerned with the need of insuring that school children are provided with nutritious foods during the school day. The National School Lunch Act was passed in 1946.[1] The Child Nutrition Act (the Act) became law in 1966.[2] By way of subsidy to local school districts the legislative scheme provides breakfast and lunch programs in public schools through Federal and State matching grants. As affluence became a part of American life, parents, school officials, health authorities, and ultimately Congress became disturbed by the growing consumption of so called "junk foods" offered in the public schools. With the introduction and installation of coin operated vending machines candy, soda pop and snack items were made readily available and were seen as competing for the children's coins and appetites. As the trial court noted it is an "obvious fact of life" that the meals offered under the above programs and the "snacks" being offered by appellants are in direct competition.

In 1970 the Act was amended to authorize the Secretary to regulate foods sold in competition to the school nutritional program.[3] The purpose of the amendment was to empower the Secretary to study the sale of candy bars and soft drinks in the schools and regulate those commodities which might be found to adversely impact the sound nutritional food service sought to be provided. The Secretary adopted a regulation providing in pertinent part: " . . . the sale of extra food items at the same time and place as the non-profit program in the schools shall be restricted."

Some schools however, recognizing the profitability of selling snack foods, initiated and maintained programs where either the school or a student organization of the school realized financial gain from the sale of pop, candy and other items not provided under the Act. Consequently Congress again amended the Act in 1972 by eliminating the authority of the Secretary to regulate competitive food sales if the proceeds from the sales inured to the benefit of the schools or organizations approved by the schools.[4] Profit had triumphed over nutrition.

The foregoing constituted the state of the record up to 1977. In that year Congress again perceived an abuse of the food service program through competitive sale of junk foods in schools taking part in the program. After considerable legislative activity the Act was again amended by the addition of four words to 42 U.S.C. § 1779. This added language had the effect of reinstating the authority of the Secretary to prohibit the sale of some foods even though the proceeds from the sale inured to the benefit of the school or its satellites.

Pursuant to the informal rule making procedures provided by 5 U.S.C. § 553, the

---

1. Pub.L. 79–396, § 2, 60 Stat. 230 (1946), 42 U.S.C. § 1751, et seq.

2. Pub.L. 89–642, § 2, 80 Stat. 885 (1966), 42 U.S.C. § 1771, et seq.

3. Pub.L. 91–248, § 8, 84 Stat. 207 (1970), 42 U.S.C. § 1779, et seq.

4. Pub.L. 92–433, § 7, 86 Stat. 724.

Secretary undertook to establish rules (regulations) carrying out the congressional mandate. After approximately two years' passage of time, numerous public hearings, and the compilation of a 15,000 page record, the regulations complained of were promulgated. As written the regulations eliminated the sale of soda water (soda pop), water ices, chewing gum and certain candies on the school premises until after the last lunch period.[5]

Appellant, considering itself aggrieved, filed suit in the District Court pursuant to 5 U.S.C. § 706 to set aside the regulation on the ground that the same is arbitrary, capricious, and an abuse of discretion. Appellant also contends the regulations announced by the Secretary are in excess of statutory jurisdiction and promulgated without the observance of the procedures required by law. Injunctive relief was sought. The District Court, in a memorandum opinion, denied injunctive relief, entered summary judgment for the defendant (appellee) and dismissed the complaint.[6] This appeal ensued.

Appellant claims reversible error on the part of the trial court in upholding the regulations. Specifications of error may be summarized as follows:

A. That the Secretary exceeded the authority granted by the statute (42 U.S.C. § 1779 as amended in 1977) in adopting regulations limiting the time and place of sale of competitive foods. 7 C.F.R. §§ 210.-15h and 220.12.

B. That the Secretary promulgated the competitive food regulations in violation of the Administrative Procedure Act, 5 U.S.C. §§ 551, 553 in the following particulars:

1. The Secretary failed to evaluate and respond to substantial comments on the proposed regulations.

2. The Administrative Record does not support the regulations.

3. The regulations established a nutrient standard which arbitrarily discriminated among foods that failed to meet the standard.

C. That the Appellant was entitled to injunctive relief.

### THE TIME AND PLACE ISSUE

The initial and most difficult issue presented by this appeal has been referred to as the time and place issue.

The trial court held the Secretary acted within his authority, granted by the statute, in restricting the sale of competitive, unapproved foods, throughout the school until after the last lunch period.[7] He found the statute itself contained no precise time and place designation. He further held the Secretary to be specifically authorized to establish regulations which would affect foods available "in competition with" meals provided under the non-profit meal program. Finally he was unpersuaded that the legislative history demonstrated Congress contemplated a narrower time and place application than provided in the regulation under attack.

In his Memorandum Opinion, supporting the Order appealed from, the District Court explicated its rationale for holding the regulations concerning time and place to be reasonable and consistent with the Congressional mandate.

"The clear purpose of the Act would be frustrated if foods identified as non-nutritious could be sold fifteen minutes before lunch or in vending machines located down a corridor from the cafeteria. The Court need not search the record. It is an obvious fact of life that school premises vary in size and design, that food is served at different times in different schools and sometimes in multiple or even overlapping shifts, and that a vending machine, no matter where located, can

---

**5.** 7 CFR 210–220, and Appendix B thereto.

**6.** The court did grant partial relief in a consolidated case in favor of Community Nutrition Institute, however that determination does not affect this appeal.

**7.** While the sale of other non-nutritious food items are banned by the regulations, we are concerned in this appeal only with the sale of soft drinks (soda water).

operate as a magnet for any child who inclines toward the non-nutritious. The time and place approach chosen by the Secretary was entirely reasonable and consistent with congressional objectives."

Appellant forcefully urges the court below erred in so holding and points out the statute, before and after amendment, does contain specific language designating the time and place to be controlled by the authorized regulation. The pertinent part of the amended act, quoted above, contains two sentences. The first sentence was not changed from the 1972 version and authorized the Secretary to adopt regulations to limit the sale of food offered in competition to the food provided in the breakfast and lunch programs. The second sentence, where the amended words were inserted, retained the language "in food service facilities or areas during the time of food service." This language Appellant contends clearly limited the Secretary to the actual areas were food was prepared and served and limited the time to those times in which there was an actual service of food. According to the Appellant this constituted a time and place limitation and it is therefore argued that the regulations barring the sale of competitive foods throughout the entire school until after the last lunch serving was without lawful authority and was, indeed, contrary to the clear language of the act.

This argument is supported, according to the Appellant, by the Secretary's own past interpretations and enforcement policies. Since the 1972 amendment, the Secretary, with the same time and place limitation language contained in the rule, only restricted the sale of competitive foods to "the same *time* and *place* as the non-profit program in the school." (Emphasis supplied.) This, Appellant says, indicates the Secretary had previously interpreted the identical statutory language to limit control of competitive foods to the actual food service area and to the time of actual food service.

Appellant further contends, contrary to the District Court holding, that the legislative history shows a clear Congressional intent to limit the time and place of application of the ban on the sale of competitive foods to the areas where the food was to be served and to periods of such service. A plethora of quotes from various members of Congress, selected from the legislative history, is relied upon to indicate the ban on sales of competitive junk food was intended to control such sales only at the times and places where school meals were being served.

Respondents, as might be anticipated, take the position that the Secretary's time and place approach is consistent with both the intent of the statute and the legislative history. It is the position of the respondents that Congress demonstrated a clear desire to prevent children from consuming non-nutritious junk foods and gave the Secretary authority to "prescribe such regulations as he may deem necessary to carry out the Act." It is argued that to adequately regulate the service of competitive foods it was entirely reasonable and within the statutory contemplation for the Secretary to ban the sale of junk food from the entire school premises during the portion of the day when breakfast and lunch were being served. Selected examples of quoted language from the legislative history are claimed to show Congress did not intend to limit the time and place of the ban on competitive foods.

■ In construing the effect of a statute it is elementary that we are obliged to begin with a consideration of the language employed by Congress. *Reiter v. Sonotone Corp.,* 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979) and to give effect, if possible, to all of the language included by Congress. *United States v. Menasche,* 348 U.S. 528, 538, 75 S.Ct. 513, 519, 99 L.Ed. 615 (1955). The statute provides in the first sentence that the Secretary may regulate the sale of foods offered in competition to the food served in the subsidized school food programs. We have no trouble in finding that soda pop, if offered at the same time and place as programed foods, would be in competition with those foods for both the child's coins and appetites. Contrary to Ap-

pellant's contentions, the Secretary was fully authorized to regulate the sale of soda pop. We cannot however ignore the second sentence of the statute. In that sentence the authority of the Secretary to regulate the sale of competitive foods is restricted to the sale of competitive foods in "food service facilities or areas during the service of food" under the school nutritional program.

An examination of the legislative history leads to the conclusion, albeit inconclusively, that the Congressional intent was to confine the control of junk food sales to the food service areas during the period of actual meal service.

It is undisputed the Secretary had, in adopting regulations under the act up until the 1977 Amendment, restricted the ban on competing foods to the time and place of meal service. Congress is presumed to have been aware of the prior interpretation of the same language by the Secretary and to have intended a continued consistent interpretation. *Cannon v. University of Chicago,* 441 U.S. 677, 696–698, 99 S.Ct. 1946, 1957, 1958, 60 L.Ed.2d 560 (1979).

It follows that the Secretary exceeded his rule making authority when he promulgated the time and place regulations barring the sale of competitive foods throughout the school and until after the end of the last service of the day. The District Court erred in upholding the regulation as to the time and place provision.

### ALLEGED FAILURE OF THE SECRETARY TO EVALUATE AND RESPOND TO SUBSTANTIAL COMMENTS

Appellant contends the Secretary failed to address and consider comments critical to the validity of the regulations under attack. The Secretary was mandated to give general notice in the Federal Register of the proposed rule and after such notice to permit interested persons to participate in the rule making process by submission of relevant views, data and argument. After considering the input from interested parties, the agency was required to incorporate into subsequently adopted rules a concise, general statement of the basis and purpose of the rule. 5 U.S.C. § 553.

These procedural requirements are intended to assist judicial review and to insure fair treatment for persons to be affected by the regulations so promulgated. *Home Box Office, Inc. v. FCC,* 567 F.2d 9, 35 (D.C.Cir.1977). There is no dispute the Secretary complied with the technical steps so mandated. Appellant complains the Secretary in effect ignored much of the input received from interested parties as evidenced by the statement of the basis and purpose of the rule.

A considerable portion of the material presented to the Secretary and allegedly ignored in the rule making decision bears on the time and place issue dealt with above. Since it has been determined the Secretary established time and place provisions beyond the authority granted by the Act, a substantial portion of Appellant's contention on this allegation of error has been mooted.

We have examined the balance of Appellant's contentions regarding the alleged failure to consider pertinent comments and material. Our task is to determine whether the rule making decision of the Secretary was arbitrary, capricious, an abuse of discretion or otherwise contrary to law. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). To accomplish this we must determine if the relevant factors have been adequately considered and dealt with by the Secretary. *Home Box Office, Inc. v. FCC,* 567 F.2d 9, 36 (D.C.Cir.1977), cert. denied, 434 U.S. 829, 98 S.Ct. 111, 54 L.Ed.2d 89 (1978).

It is hornbook law that deference must be afforded to the expertise of an agency and the court must avoid substituting its opinion for that of the administrator.

A careful review of the voluminous record leaves us with the conclusion that the Secretary adequately considered the relevant information developed. He was not required to make detailed findings

of fact as might be necessary in adversary court proceedings. *Automotive Parts and Accessories Association v. Boyd,* 407 F.2d 330, 339 (D.C.Cir.1968). On balance it must be held that the Appellant has failed to demonstrate the action of the Secretary on this point was arbitrary, capricious, an abuse of discretion or otherwise contrary to law.

### THE ALLEGATION THAT THE RECORD DOES NOT SUPPORT THE REGULATIONS

■ Appellant contends the regulations as promulgated are not supported by the record. It is charged that incomplete and unreliable data was relied on while other and more reliable data was disregarded. Appellant further contends the Secretary relied on *ex parte* materials never disclosed to public scrutiny or comment.

Generally the thrust of Appellant's complaint is aimed at the determination of the Secretary that there existed an underconsumption of nutritions, overconsumption of calories and deleterious consumption of snack foods by school children. Appellant says that the Secretary relied on two studies known popularly as the TSNS (Ten State Nutritional Survey) and the Bogalusa Studies. An attack is made on the reliability of these studies. On the other hand, Appellant points to a comprehensive nutrition study known as the Health and Nutrition Examination Survey (HANES) which is allegedly a more reliable study.

We do not weigh the evidence; we merely examine the record to see if there is evidence, which if accepted by the Secretary, supports the determination of the agency. We are then bound by the arbitrary and capricious test. The record does not sustain the contention of the Appellant that the regulation is not supported by the record. Neither does the record support the contention that *ex parte* information in any way materially affected the adoption of the regulation. *See, Action for Children's Television v. FCC,* 564 F.2d 458, 476 (D.C.Cir. 1977).

### ALLEGED ARBITRARY DISCRIMINATION AMONG FOODS

■ As adopted the regulations apply to only four categories of foods, to wit: soda water, water ices, chewing gum, and certain candies. As indicated above we deal only with the soda water (soft drinks). Appellant contends it is irrational to ban soft drinks as a category because they fall below the nutrition level established by the regulations when a large list of other foods are permitted to be served which likewise fail to meet the standards. It cites such items of foods as canned pears, fruit cocktail, raisins, baked apples, pies, doughnuts, soups and crackers. Appellant perceives it as arbitrary and capricious to adopt a nutrient standard and then fail to enforce it evenly and fairly.

The Secretary recognized the inherent problem in a categorical approach to banning the sales of food items:

The Department recognizes that a regulatory scheme based entirely on a categorical approach cannot be precise. To insure greater precision in the application of the rule, a procedure is provided for consideration of individual foods and additional categories of foods. The petition procedure as set forth below differs from the one described in the July 6 proposal. Changes were made in light of the comments to provide a more workable procedure. Specifically, although persons may petition the Department to remove individual foods from the established categories of foods of minimal nutritional value, additional foods will not be restricted for competitive sale on an individual basis. Rather, the Department will review petitions requesting that new *categories* of foods of minimal nutritional value be designated. Because of the large number of individual foods available in the marketplace and the constant development of new food products, the Department believes that it would not be feasible to maintain a list of individual foods which failed the nutrient test established in the rule and thus were restricted from competitive sale.

45 Fed. Register, Tuesday, January 29, 1980 (page 122 of the Joint Appendix).

As indicated the Secretary thereafter established, as a part of the regulations, a fully explicated plan for reviewing petitions to designate new categories of foods of minimal nutritional value as further facts are developed and the need shown. Thus the establishment of the initial categories was, as the district court noted, a first step toward dealing with the problem which Congress wanted controlled. Full provision is made to update the categories as more information is forthcoming.

Holdings of the Supreme Court seem to give tacit approval to this approach where some reasonable basis for the classification is shown. *Fullilove v. Klutznick,* 448 U.S. 448, 485, 100 S.Ct. 2758, 2778, 65 L.Ed.2d 902 (1980); *Weinberger v. Salfi,* 422 U.S. 749, 769, 95 S.Ct. 2457, 2468, 45 L.Ed.2d 522 (1975); and *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970).

Here the Secretary was faced with the obligation of devising regulations to meet the problem Congress perceived of low nutrient foods being sold competitively to the food programs furnished in the schools. The Secretary, recognizing the imprecision of the category approach to the regulation still found it to be the most practical control available on a temporary basis until further information could be developed in an orderly fashion. We are obliged to grant deference to the expertise of the administrator. When viewed in the foregoing perspective, the action of the Secretary cannot be held to be irrational or impermissibly arbitrary.

Reversed in part, affirmed in part and remanded. On remand the District Court may consider the possibility of injunctive relief.

WILKEY, Circuit Judge, dissenting in part:

I would affirm on the basis of the District Court's opinion. I respectfully dissent from my colleagues' views on the time and place limits to the Secretary's regulations. As this is a matter totally within the power of Congress to determine, I say no more and leave it to the legislature to decide whether it prefers the position of this court or that of the Secretary and the District Court.