**UNIFICATION CHURCH, et al., Appellants**

v.

**IMMIGRATION & NATURALIZATION SERVICE.**

No. 83–2238.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 22, 1984.

Decided June 4, 1985.

David Grosz, Los Angles, Cal., with whom Barry A. Fisher, Larry J. Roberts, Los Angles, Cal., and David Carliner, Washington, D.C., were on the brief, for appellants.

Nicholas S. Zeppos, Atty., Dept. of Justice, Washington, D.C., with whom Richard K. Willard, Acting Asst. Atty. Gen., Dept. of Justice, Joseph E. diGenova, U.S. Atty. and William Kanter, Atty., Dept. of Justice, Washington, D.C., were on the brief, for appellee.

Sylvia Royce and Thomas W. Hussey, Attys., Dept. of Justice, Washington, D.C., entered appearances for appellee.

David O. Stewart, Washington, D.C., was on the brief for Small Business Legal Defense Committee, amicus curiae, urging reversal.

Before WRIGHT, Circuit Judge, and WILKEY * and McGOWAN, Senior Circuit Judges.

Opinion for the Court filed by Senior Circuit Judge McGOWAN.

___

* Judge Wilkey, who was an active Circuit Judge    at the time this case was argued, later took

McGOWAN, Senior Circuit Judge:

In this case, we review the District Court's decision to deny attorney's fees to appellants. 574 F.Supp. 93. The case involves the proper interpretation of two provisions of the Equal Access to Justice Act. We affirm.

In the underlying case, three individuals and the Unification Church (Church) sued to overturn the refusal of the Immigration and Naturalization Service (INS) to allow the individual plaintiffs to remain in the United States. The plaintiffs prevailed. *See Unification Church v. INS*, 547 F.Supp. 623 (D.D.C.1982). They thereby met any threshold criteria of success necessary for an award of attorney's fees. The contested issues here revolve rather upon the extent to which the Equal Access to Justice Act waives the usual sovereign immunity of the United States against awards of attorney's fees.

█ The Equal Access to Justice Act (Act) waives the federal government's immunity from attorney's fees, under certain conditions set forth therein, in both adversarial administrative proceedings and judicial proceedings. Equal Access to Justice Act, Pub.L. No. 96–481, tit. II, 94 Stat. 2325 (1980) (codified at 5 U.S.C. § 504 and 28 U.S.C. § 2412). What we will call "subsection (b)" of the Act waives immunity against attorney's fees stemming from judicial proceedings "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." 28 U.S.C. § 2412(b) (1982). What we will refer to as "subsection (d)" awards fees in judicial proceedings against the United States "to a prevailing party ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (1982). Awards under subsection (d), how-

ever, are specifically limited to a prevailing "party" who is

(i) an individual whose net worth did not exceed $1,000,000 at the time the civil action was filed, (ii) a sole owner of an ... organization whose net worth did not exceed $5,000,000 at the time the civil action was filed, except that an organization described in section 501(c)(3) of the Internal Revenue Code ... may be a party regardless of the net worth of such organization ..., or (iii) a sole owner of an unincorporated business ... or organization ... having not more than 500 employees at the time the civil action was filed....

28 U.S.C. § 2412(d)(2)(B) (1982).[1] This case raises questions on the interpretation of both subsection (b) and subsection (d). First, we treat whether either the Church or the individuals can recover under subsection (b). We then decide whether the individual appellants can receive fees under subsection (d). We next discuss whether the proper interpretation of subsection (d)'s definition of "party" allows the Church to receive fees under subsection (d) regardless of the number of employees it has. Finally, we discuss whether the Church has too many "employees" to qualify for fees under subsection (d).

I

█ Subsection (b) of the Act makes the United States liable for attorney's fees "to the same extent" that any other party would be liable. Here, the Church claims that a state would be liable for fees under 42 U.S.C. § 1988 (1982), if the state were to have acted under color of its laws to violate the individual plaintiffs' constitutional rights as the federal government did here under color of federal law, and that the federal government is therefore liable for the Church's attorney's fees. The federal government argues that it did not violate any of the statutes giving rise to fees un-

senior status. He did not participate in the disposition of this case.

1. The original Act "sunset" subsection (d) as of October 1, 1984, but the provisions continue to apply to any suit commenced before the date of repeal. Equal Access to Justice Act, Pub.L. No. 96–481, tit. II, § 204(c), 94 Stat. at 2329.

der section 1988, and thus that it is not liable for fees here. Following the decisions of a number of other circuits, we hold that the federal government is not liable for fees under section 1988 unless it actually violates one of the statutes giving rise to fees under that section, regardless of whether a state might be liable for such fees had the state taken the same actions under color of state law as the federal government took under color of federal law.

> Subsection (b) of the Act reads in full: Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

28 U.S.C. § 2412(b) (1982). It is the meaning of the final sentence, particularly the phrase "to the same extent that any other party would be liable," that is at issue here.

The particular statute underlying the plaintiffs' fee claim under subsection (b) is 42 U.S.C. § 1988, which reads in part:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [20 U.S.C. 1681 *et seq.*], or title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d *et seq.* ], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988 (1982). In turn, the plaintiffs claim section 1988 fees through section 1983:

> Every person who, under color of any statute ... of any State or Territory or the District of Columbia, subjects ... any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law [or] suit in equity....

42 U.S.C. § 1983 (1982).

The appellants' claim is that the phrase "to the same extent" in subsection (b) means the United States is liable for attorney's fees whenever "any other party"—in this case, a state—would be liable in an "analogous" situation. Section 1988, through section 1983, makes states liable for attorney's fees stemming from violations of federal rights under color of *state* law. The appellants argue that subsection (d), by making the federal government liable "to the same extent" as "any other party," makes the United States liable for attorney's fees stemming from violations of federal rights under color of *federal* law.

In contrast, the government's interpretation, and that adopted by the District Court, is that "to the same extent that any other party would be liable" means substituting "the United States" into a fees statute wherever that statute might refer to states or private individuals as parties. The circumstances triggering the fees would otherwise remain unchanged.

The usual grant of sovereign immunity to the United States from fees awarded under a particular statute would, under the government's interpretation, now be waived even in the absence of a particular provision in the fees statute to that effect. For example, if a statute passed prior to the Act awarded fees to a prevailing party who brought suit "to enforce the laws of the United States" but did not specifically mention the liability of the federal government for fees, the government would now be liable for fees if it were to be an unsuccessful defendant in such a suit; in the absence of subsection (b), the United States would be protected from such liability by its sovereign immunity. The Act does not,

however, change what is "enforcement" and what are the "laws of the United States" for the purposes of the fees statute.

Applying the government's interpretation of subsection (b) would mean that the United States would be liable for fees when it was a losing defendant in proceedings to enforce the statutes listed in section 1988. Applying this interpretation to this case, the United States is not liable for fees. It did not violate section 1983, because it did not violate the appellants' rights under color of state law, as required by the words of section 1983. It did violate the appellants' rights under color of federal law, but that creates no cause of action under section 1983. Since it did not violate section 1983, it is not liable for fee awards under Section 1988, and thus not liable for fees awarded under subsection (b) of the Act.

■ A number of other circuits have decided this question. All have upheld the government's position that subsection (b) does not authorize fee awards in actions against the federal government analogous to section 1983 actions. *See Premachandra v. Mitts,* 753 F.2d 635 (8th Cir.1985) (*en banc* ); *Lauritzen v. Lehman,* 736 F.2d 550 (9th Cir.1984); *see also Saxner v. Benson,* 727 F.2d 669, 673 (7th Cir.1984) (alternative holding), *cert. granted on another issue,* —— U.S. ——, 105 S.Ct. 1166, 84 L.Ed.2d 318 (1985). We find the reasoning of these other courts to be persuasive and therefore adopt their resolution of the issue. The petitioners here cannot be awarded fees under subsection (b) because none of the statutes cited in section 1988 is applicable here. Like section 1983, sections 1981 and 1982 involve violations of state law. No violation of state law is at issue here. Sections 1985 and 1986 treat various conspiracies not involved here. The statutory titles listed in section 1988 prohibit discrimination in federally funded programs on the basis of race, color, or national origin, or prohibit discrimination on the basis of sex or blindness in federally funded educational programs. None of these issues is involved in this immigration case.

If the plaintiffs below are to be awarded attorney's fees, the award must be made under subsection (d).

## II

The individual appellants in this case each appear to have a net worth of less than a million dollars. *See* Appellant's Brief at 26. They would thus at first glance appear eligible for fees under 28 U.S.C. § 2412(d)(2)(B)(i) (1982). After the District Court examined the fee arrangement between the individual appellants and the Church, however, it held that that arrangement made the Church the only "real party in interest" with respect to fees, and thus made irrelevant the qualification *vel non* of individual plaintiffs for fees. *See Unification Church v. INS,* 574 F.Supp. 93, 94 n. 2 (D.D.C.1983). We agree.

The doctrine of the real party in interest has a substantial history. The doctrine is often relevant to which entities may properly press a claim or an appeal. *See Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 794 (D.C.Cir.1983) (claim), *cert. denied,* —— U.S. ——, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984); *Sedgwick v. Superior Court for the District of Columbia,* 584 F.2d 1044, 1045 n. 1 (D.C.Cir.1978) (appeal), *cert. denied,* 439 U.S. 1075, 99 S.Ct. 849, 59 L.Ed.2d 42 (1979). The phrase has also been used in a variety of other situations. *See Loveday v. FCC,* 707 F.2d 1443, 1449 (D.C.Cir.) (true source of funds for purchase of advertising termed "real party in interest"), *cert. denied,* —— U.S. ——, 104 S.Ct. 525, 78 L.Ed.2d 709 (1983); *United States v. District of Columbia,* 669 F.2d 738, 759 (D.C.Cir.1981) (MacKinnon, J., concurring in part and dissenting in part) (principal of agent in contract negotiations termed "real party in interest"). Its use in a case involving attorney's fees is unusual but not unprecedented. *See National Treasury Employees Union v. Department of the Treasury,* 656 F.2d 848, 850–51 (D.C.Cir.1981) (fact that union rather than its outside attorneys was "real party in interest" owing to agreement between attorneys and union makes award of fees

to outside counsel inappropriate under Privacy Act). We find the doctrine appropriate here to carry out the congressional intent with regard to subsection (d).

In enacting the Equal Access to Justice Act, Congress wished to ease the burden upon small businesses of engaging in litigation with the federal government.[2] Subsection (d) sets forth a generous standard for awarding fees to prevailing parties. Subsection (d)(2)(B), however, limits sharply those eligible as "prevailing parties." Evident from early in the history of the legislation through its passage is a congressional intention to limit the scope of subsection (d) to individuals or to small entities that find particularly burdensome the ever-rising costs of litigation. *See Award of Attorneys' Fees Against the Federal Government: Hearings on S.265 Before the Subcommittee on Courts, Civil Liberties, and the Administration of Justice of the House Judiciary Committee*, 96th Cong., 2d Sess. 56 (1980) (testimony of Rep. McDade) (describing plight of "the small business owner" and his "hometown attorney" or "family lawyer") [hereinafter cited as *"Hearings "*]; H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10 (1980), U.S.Code Cong. & Admin.News 1980, 4953, 4988 ("The [bill] focuses primarily on those individuals for whom cost may be a deterrent to vindicating their rights."). The converse of this concern is a desire not to subsidize through subsection (d) the purchase of legal services by large entities easily able to afford legal services. To implement this latter congressional intent in the case at hand, invocation of the real-party-in-interest doctrine is proper.

■ We quote the District Court's description of the fee arrangement between the individual plaintiffs and the Church:

The affidavit of plaintiffs' counsel of July 27, 1983, discloses that, although he was "retained" by the individual plaintiffs to represent them before the INS and in this court, his "arrangement" for payment for his services is solely with the Unification Church for which he has performed like services since April, 1974.

574 F.Supp. at 94 n. 2. Whatever the outcome of our consideration of fees here, then, the individual appellants will not pay the fees. If we deny fees, the Church will pay the fees. If we award fees, the INS will pay the fees. The Church is the beneficiary of any award of fees, not the individual appellants, and thus the Church can fairly be characterized as the real party in interest.

■ If we were to award fees in this case on the basis that the individual appellants qualified under subsection (d)(2)(B)(i), we would open the door for the wholesale subversion of Congress's intent to prevent large entities from receiving fees under subsection (d). In a wide variety of circumstances, organizations obviously not qualified for an award under subsection (d) would be able to persuade individuals to be among the parties, and the organization would then receive free legal services if its side were to prevail. We cannot, consistent with our duty to implement the will of Congress, allow such a situation. We hold therefore that, where the fee arrangement among the plaintiffs is such that only some of them will be liable for attorney's fees, the court shall consider only the qualification *vel non* under the Equal Access to Justice Act of those parties that will be themselves liable for fees if court-awarded fees are denied.

The appellants' indisputable contention that the private individuals here have rights at stake in the *underlying* case does not alleviate our concerns, since the individual appellants have nothing at stake *in the award of fees:* they received representation, and they will not pay for it no matter what the outcome of the fees determination.

The appellants also take exception to our analysis on the grounds that courts have

---

**2.** Indeed, the Equal Access to Justice Act was passed as one of the titles in an act that assisted small businesses in a number of ways. *See* Act of Oct. 21, 1980, Pub.L. No. 96–481, 94 Stat. 2321.

awarded fees to attorneys who ·have arranged not to charge their clients any fees at all. The relevant cases cited by appellants, however, involve awards to legal-services organizations. *See, e.g., Cornella v. Schweiker,* 728 F.2d 978, 985–87 (8th Cir. 1984); *Kauffman v. Schweiker,* 559 F.Supp. 372, 373–75 (M.D.Pa.1983). Since a legal-services organization is itself likely to qualify for an award under subsection (d) of the Act as a section 501(c)(3) organization with fewer than 500 employees, Congress's intent to limit the receipt of fees to those who qualify under subsection (d)(2)(B) would not thereby be thwarted. *See* 42 U.S.C. § 2996b(c) (1982) (legal-services organization may be treated as a section 501(c)(3) organization for purposes of the Internal Revenue Code). Here, in contrast, if the Church would not itself qualify under subsection (d), then to allow the presence of the individual plaintiffs to result in a fee award would allow the Church to receive free legal services courtesy of a statute that intended to exclude the Church from its scope.

In addition, we note that this case involves an arrangement among *clients* as to who will pay the fees. In the cases involving legal-aid societies, the agreements at issue could be characterized as between attorneys or as between an attorney and his client, but not as between clients. *Cf.* H.R.Rep. No. 1418, at 15, U.S.Code Cong. & Admin.News 1980, at 4994 ("computation of attorney fees should be based on prevailing market rates without reference to the fee arrangements between the *attorney and client* ") (emphasis added). The possibility of one client using another to obtain fees otherwise unavailable under the Act, absent in the cases involving legal-service organizations, is present here.

Having ruled that none of the plaintiffs qualify under subsection (b) and that the individual plaintiffs' qualifications are irrelevant in this case to an award of fees under subsection (d), we turn to the question of whether the Church qualifies for a fee award under subsection (d).

### III

#### A.  *The Language of the Statute*

In interpreting the requirements of section 2412(d), we begin with the language of the statute. *See Florida Power & Light Co. v. Lorian,* — U.S. —, 105 S.Ct. 1598, 1603, 84 L.Ed.2d 643 (1985); *United States v. Yermian,* — U.S. —, 104 S.Ct. 2936, 2938, 82 L.Ed.2d 53 (1984); *Natural Resources Defense Council v. EPA,* 725 F.2d 761, 768 (D.C.Cir.1984). We quote again the general standard of subsection (d)(1)(A):

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (1982). Subsection (d)(2)(B) limits a prevailing "party" to:

> (i) an individual whose net worth did not exceed $1,000,000 at the time the civil action was filed, (ii) a sole owner of an unincorporated business, or a partnership, corporation, association, or organization whose net worth did not exceed $5,000,000 at the time the civil action was filed, except that an organization described in section 501(c)(3) of the Internal Revenue Code ... may be a party regardless of the net worth of such organization ..., or (iii) a sole owner of an unincorporated business, or a partnership, corporation, association, or organization ... having not more than 500 employees at the time the civil action was filed....

28 U.S.C. § 2412(d)(2)(B) (1982).

We are here presented with an organization that clearly fits within subsection (ii) but does not clearly fall under subsection (iii). The Church is indisputably a section 501(c)(3) organization, and thus falls under subsection (ii) regardless of its net worth.

The Church arguably has more than 500 employees, however, and thus does not fall clearly under subsection (iii). The appellants argue that the statute's use of "or" between subsections (ii) and (iii) means that a section 501(c)(3) organization can qualify for fees regardless of the number of its employees. If the Church's assertion is correct, we need not reach the issue of whether the Church has too many "employees" to fall under subsection (iii). We therefore address first the issue of whether the relationship between subsections (ii) and (iii) is conjunctive or disjunctive.

■ Ordinarily, a court interpreting a statute is not to look further than the plain language of the statute. *See TVA v. Hill*, 437 U.S. 153, 173, 98 S.Ct. 2279, 2291, 57 L.Ed.2d 117 (1978). In subsection (d), Congress joined subsections (ii) and (iii) with an "or," and it is the meaning of that joinder that is at issue here. One might initially consider those who choose the word "or" to have intended its meaning to be unambiguously disjunctive, and thus consider the relationship of subsections (ii) and (iii) to be disjunctive without further analysis. The Church would then qualify under subsection (d) for an award of attorney's fees, since it clearly meets the criterion of subsection (ii) owing to its status as a section 501(c)(3) organization.

The Supreme Court has warned us, however, that we must not rush to conclude that legislators always intend the word "or" to be disjunctive. In *De Sylva v. Ballentine*, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed.2d 1415 (1956), the Court was called upon to interpret a statute conveying copyright renewal rights to "the widow, widower, or children of the author, if the author be not living." 351 U.S. at 571, 76 S.Ct. at 975. Speaking for the Court, Justice Harlan expressed his reluctance to treat "or" as disjunctive without further analysis:

> We start with the proposition that the word "or" is often used as a careless substitute for the word "and"; that is, it is often used in phrases where "and" would express the thought with greater

clarity. That trouble with the word has been with us for a long time.

*Id.* at 573, 76 S.Ct. at 976 (citations omitted). After an analysis of the history of the various federal copyright acts, the Court concluded that "while the matter [was] far from clear, ... on balance, the more likely meaning" of the "or" in the statute was conjunctive. *Id.* at 580, 76 S.Ct. at 979; *cf. Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise....").

This court has found *De Sylva* relevant before. In *United States v. Moore*, 613 F.2d 1029, 1038–44 (D.C.Cir.1979), *cert. denied*, 446 U.S. 954, 100 S.Ct. 2922, 64 L.Ed.2d 811 (1980), this court cited *De Sylva* as support for the proposition that "or" must sometimes be read as a conjunctive:

> Normally, of course, "or" is to be accepted for its disjunctive connotation, and not as a word interchangeable with "and." But this canon is not inexorable, for sometimes strict grammatical construction will frustrate legislative intent. [citing *De Sylva*] That, we are convinced, is precisely what will occur here unless "or" is read as "and."

613 F.2d at 1040 (citations omitted). After an analysis of the judicial and legislative history of the statute at issue in *Moore*, this court concluded that it was constrained to interpret the "or" as conjunctive.

Bearing in mind these precedents and the complexity of the Act's scheme for awarding attorney's fees, we turn to the legislative history to see whether reading the "or" in subsection (d) in its usual disjunctive connotation would be demonstrably at odds with the will of Congress. *See Watt v. Alaska*, 451 U.S. 259, 266, 1015 S.Ct. 1673, 68 L.Ed.2d 80 (1981) ("The circumstances of the enactment of particular legislation may persuade a court that Congress did not intend words of common meaning to have their literal effect."); *cf. Montana v. Clark*, 749 F.2d 740, 745 (D.C.

Cir.1984) ("plain" provision that conflicts with other plain provisions necessitates examination of legislative history). We first examine the committee reports and hearings on the Act. We also examine a definitional provision of "party" that appears elsewhere in the Act, Congress's treatment of subsection (d) since its passage, and the broad policies underlying the Act and its judicial interpretation. *Cf. Henry v. George Hyman Construction Co.,* 749 F.2d 65, 75–77 (D.C.Cir.1984) (examining structure of statute, legislative history, and underlying policies of relevant provision); *Interstate Natural Gas Association of America v. FERC,* 716 F.2d 1, 10–15 (D.C. Cir.1983) (same), *cert. denied,* — U.S. ——, 104 S.Ct. 1615, 80 L.Ed.2d 144 (1984). Finally, we review the arguably relevant decisions of other federal courts of appeals. We conclude that an entity must meet the requirements of both subsection (ii) *and* subsection (iii) if it is to receive fees under subsection (d).

## B. *The Committee Reports*

The conference report's explanation of who is eligible to be a "prevailing party" under subsection (d) appears to contradict the face of the statute:

> The Senate bill defines prevailing parties eligible for an award to include individuals and certain entities, *except:* ... in the case of entities, those whose net worth at the initiation of the adversarial proceeding exceeded $5 million *or* who had more than 500 employees. Charitable tax exempt organization so designated under 501(c)(3) of the Internal Revenue Code ... are exempt from the *monetary* ceiling.
>
> . . . .

The conference substitute adopts the Senate provision.

H.R. [Conference] Rep. No. 1434, 96th Cong., 2d Sess. 26 (1980) U.S.Code Cong. & Admin.News 1980, 5015 (emphasis added). The report's excepting from eligibility for fee awards those entities with net worths greater than $5 million or with more than 500 employees is equivalent to the affirmative statement, "Those eligible to receive fee awards are those with less than $5 million in net worth *and* with fewer than 500 employees." The statement in the report that the "or" that joins subsections (ii) and (iii) should be given a conjunctive meaning is in contrast to the disjunctive meaning of "or" that would typically be inferred from the face of the statute.

In addition, the portion of the report quoted above states that section 501(c)(3) organizations are exempt from the net-worth limit, but does not also exempt them from the number-of-employees limit. If the subsections are to be read disjunctively, drawing such a distinction would be without effect, since the net-worth exemption would mean section 501(c)(3) organizations qualified regardless of the number of employees. The general rule is to interpret the language of legislators so as to give effect to all that language if such a result is possible through a reasonable interpretation. *See United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 519–20, 99 L.Ed.2d 615 (1955) (courts should interpret statutes so as to give meaning to every word); *accord National Soft Drink Association v. Block,* 721 F.2d 1348, 1352 (D.C. Cir.1983).

According to the conference report, then, the "or" that joins subsections (ii) and (iii) is to be read conjunctively—as an "and".

The committee report on the bill in the House [3] states:

H.R.Rep. No. 1418, at 4, U.S.Code Cong. & Admin.News 1980, 4953. The Conference Committee bill reads "an organization described in section 501(c)(3) of the Internal Revenue code ... and a cooperative [agricultural] association ... may be a party regardless of the net worth of such organization or cooperative association." H.R.Rep. No. 1434, at 10, U.S.Code Cong. & Admin.News 1980, 4953. The purely stylistic

---

**3.** Except for a purely stylistic change, subsection (d)(2)(B) in the bill reported to the House differed from subsection (d)(2)(B) of the bill adopted by the Conference Committee only at the end of subsection (ii). The House bill read "an organization described in section 501(c)(3) of the Internal Revenue Code ... and a cooperative [agricultural] association ... may be a party regardless of the amount of its net worth."

Parties eligible to recover fees under [subsection (d)] include ... sole owners of unincorporated businesses, partnerships, corporations, associations, or other organizations whose net worth is less than $5 million. However, ... an organization described in section 501(c)(3) of the Internal Revenue Code of 1954 (26 U.S.C. 501(c)(3)) exempt from taxation under 501(a) of the Code, [is] excluded from the net worth ceiling[.] However, no party which is involved in an administrative proceeding or civil court action in its capacity as a business can be included under this provision of the bill if it has more than 500 employees at the time the adversary adjudication or civil action was initiated.

H.R.Rep. No. 1418, at 9, U.S.Code Cong. & Admin.News 1980, at 4988. Again, the legislative history appears to favor reading subsections (ii) and (iii) conjunctively. The second sentence quoted excepts section 501(c)(3) entities from the net worth ceiling but does not mention the number-of-employees limit. As discussed above, *see supra* pp. 1085–1086, this supports a conjunctive reading of the "or" in the statute. Indeed, the third sentence quoted above appears explicitly to make the 500-employee limit of subsection (iii) applicable even to those organizations that fall under subsection (ii).

The Church argues, however, that the phrase in the third sentence quoted above, "in its capacity as a business," shows Congress was drawing a familiar, if often blurred, line between tax-exempt organizations operating pursuant to their exempt purposes, e.g., proselytizing, and pursuant to a non-exempt purpose, e.g., training dogs, *see Ann Arbor Dog Training Club v. Commissioner*, 74 T.C. 207 (1980). *See generally* Note, *The Participation of Charities in Limited .Partnerships*, 93 Yale L.J. 1355, 1363–64 (1984) (discussing "operational test" used to determine if organizations' activities qualify them for ex-

emption under section 501(c)(3)). The phrase "in a business capacity" seems a somewhat unusual one, after all, and does immediately follow the discussion of section 501(c)(3) organizations. Congress, argues the Church, meant for section 501(c)(3) organizations to qualify for fees to the extent that the litigation furthered the organization's exempt purposes.

Although the Church's argument is not groundless, we find it insufficiently persuasive as a basis for awarding fees on the facts of this case. First, we note that the conference report contains no statement that could be construed to support excepting section 501(c)(3) organizations from the number-of-employees limit. That same report rather states that all organizations are subject to both the net-worth and the number-of-employee limits.

Second, the House report's description of the scope of subsection (d) need not be read as supporting the Church's argument that the committee meant to except section 501(c)(3) organizations operating in furtherance of their exempt purposes from the number-of-employees limit. If the committee had meant by its phrasing to prohibit non-profit organizations with numerous employees from receiving fees only when those organizations were litigating pursuant to their non-exempt purposes, the committee could have chosen to say that explicitly rather than using the phrase "in a business capacity." The distinction between businesslike and exempt activities is generally drawn in the context of an exempt organization's income-generating activities. *See generally* 4 B. Bittker, Federal Taxation of Income, Estates, and Taxes 103–1 to 103–15 (1981). We hesitate to apply the "long and tortuous series of cases, rulings, and statutory provisions," *id.* at 103–2, that treats income-generating activities to litigation activities without clearer direction from Congress than an unexplained phrase in a single report.

change was to change the first phrase of subsection (d)(2)(B) from the House bill's "'party' means a party that is," H.R.Rep. No. 1418, at 4, U.S.Code Cong. & Admin.News 1980, 4953, to

the conference bill's "'party' means," H.R. [Conf.] Rep. No. 1434, at 10, U.S.Code Cong. & Admin.News 1980, 4953.

## C. *The House Hearings and the Addition of Subsection (d)(iii)*

The sequence of events leading to the use of "or" to join subsections (ii) and (iii) also supports reading the "or" conjunctively. Subsection (iii) was not in the Act in the early stages of its consideration by Congress. *Compare Hearings, supra* p. 8, at 11–12 (prehearing version of bill) *with* H.R.Rep. No. 1418, at 4 (reported version of bill). It was added to the bill after a slightly disjointed discussion of the possibility that corporations with low net worths but a great number of employees[4] would qualify under the Act:

> *Mr. Kastenmeir:* In terms of the net worth test, will that necessarily mean a small business? That is to say, you have a corporation with $100 million in assets, $96 million are liabilities, netting out at a net worth of maybe $4 million; they would qualify then?
>
> *Mr. McDade:* Well, we would hope not. We don't want that kind of business involved.
>
> We used these size standards, this $5 million net asset figure, according to the Small Business Administration, it is a company that has 150 or fewer employees.
>
> . . . .
>
> [W]e found that after a lot of consultation and hearings that this was a reasonable way to try to get at it, and we could make legislative history, of course, that we are not looking at someone who has $500 million and $496 million in debt, and who therefore qualifies.

*Hearings* at 60–61. After this exchange, subsection (iii) was added, along with the "or" joining subsections (ii) and (iii). It would appear, therefore, that the committee decided not simply to make legislative history about the need for something beyond a simple net-worth requirement, as Representative McDade suggested, but to change the language of the bill.

The simple fact that subsection (iii) was added after this colloquy does not, of course, mean that this exchange *caused* the addition of subsection (iii). *Cf.* A. de Saint-Exupéry, The Little Prince 37–38 (K. Woods trans. 1943) (recounting protagonist's encounter with king claiming absolute and universal authority who orders his subjects to do only what they would do anyway). Such a sequence of events in a legislative history can, however, be suggestive. *See Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 358 n. 10, 81 S.Ct. 599, 611 n. 10, 5 L.Ed.2d 592 (1961) (Black, J., concurring); *cf. Lauritzen v. Lehman*, 736 F.2d 550, 555 (9th Cir.1984) (caution in using testimony from hearings to interpret statute is especially appropriate when testimony is used to enlarge waiver of sovereign immunity). And once again, the implication of the legislative history is that Congress intended for entities with more than 500 employees to be unable to obtain fees under the Act even if those entities qualified for fees under the networth provision.

## D. *Section 504's Definition of "Party"*

In addition to the definition of a "party" eligible to receive fees for the purposes of judicial proceedings at issue here, the Act contains a structurally analogous definition of a prevailing "party" for the purposes of awarding fees in *administrative* proceedings:

> "[P]arty" ... is an individual, partnership, corporation, association, or public or private organization other than an agency, but *excludes* (i) any individual whose net worth exceeded $1,000,000 at the time the adversary adjudication was initiated, and any ... organization whose net worth exceeded $5,000,000 at the time the adversary adjudication was initiated,

---

**4.** Ordinarily, of course, one expects companies with low net worths to have only a small number of employees. This need not be the case, however. "'Net worth' is calculated by subtracting total liabilities from total assets." H.R. Rep. No. 1418, at 15, U.S.Code Cong. & Admin. News 1980, at 4994. General Motors, a company with a great deal of total assets, might nonetheless have a very low net worth if its total liabilities were suddenly to skyrocket—because of, say, antitrust judgments against them—to the point where its liabilities approached its assets.

except that an organization described in section 501(c)(3) ... may be a party regardless of [its] net worth ..., and (ii) any sole owner of an ... organization, having more than 500 employees....

5 U.S.C. § 504(b)(1)(B) (1982) (emphasis added). We note that this definition is exclusive rather than, as in subsection (d), inclusive. The conference report describes this provision thus:

> The Senate bill defines prevailing parties eligible for such awards as including individuals and certain entities, *except:* ... in the case of entities, those whose net worth at the initiation of the adversial proceeding exceeded $5 million or who had more than 500 employees. Charitable tax exempt organizations so designated under 501(c)(3) ... are exempt from the monetary ceiling.
>
> ....
>
> The conference substitute adopts the Senate provision.

H.R. [Conf.] Rep. No. 1434, at 22, U.S.Code Cong. & Admin.News 1980, 5011. This report language is extremely similar to that used to describe subsection (d) in the conference report. *See supra* p. 1085.

The statutory language of this provision, which differs from subsection (d), clearly requires that an organization meet both the net-worth and the employee limits to qualify for fees. The conference report's language is consistent with this interpretation. The meaning of section 504(b)(1)(B) therefore seems clear. Unfortunately for our present purposes, however, the implications of section 504(b)(1)(B)'s language for the intended meaning of subsection (d) are more ambiguous.

The House report did state that interpretation of subsection (d) should be informed by section 504(b)(1)(B). *See* H.R.Rep. No. 1418, at 18 (subsection (d) "explained under" section 504(b)). In addition, the conference report's language is virtually identical in describing the two provisions, and one might argue that one should therefore

ascribe an identical meaning to the two provisions.

Nonetheless, Congress chose materially different language in the Act to define "party" in administrative proceedings. One might thereby infer—and do so from an action of the Congress as a whole in passing a statute with particular language rather than from the statements of committees constituting only a portion of Congress's members—that the choice of different language was meant to indicate two different definitions of "party." Congress could plausibly have wished to be more generous in awarding fees in judicial proceedings than in administrative proceedings, and have defined "party" accordingly in the two instances.

In the face of these contradictory indications of Congress's intent with respect to the relationship between section 504(b)(1)(B) and subsection (d), we can draw no reliable conclusions about subsection (d)'s exact meaning from section 504(b)(1)(B).

E.  *The Post-Enactment Actions of Congress*

We note also that reading the two subsections as requiring a party to qualify under both the net-worth and the employee ceilings to be eligible for fees is supported by events in Congress occurring after the passage of the Act. The views of a later Congress have persuasive but not dispositive value in the interpretation of statutes passed by an earlier Congress. *See Bell v. New Jersey,* 461 U.S. 773, 784, 103 S.Ct. 2187, 2193, 76 L.Ed.2d 312 (1983); *Bowsher v. Merck & Co.,* 460 U.S. 824, 837 n. 12, 103 S.Ct. 1587, 1595 n. 12, 75 L.Ed.2d 580 (1983).

Congress recently attempted to re-enact the sunsetted provisions[5] of the Act, including subsection (d). In doing so, it changed the "or" that connects subsections (ii) and (iii) here to an "and." *See* 130 Cong.Rec. S14,387 (daily ed. Oct. 11, 1984). The Senate report accompanying an earlier

5. *See supra* note 1.

version of the bill [6] was quite specific as to the rationale behind this change:

> [T]he last work in [subsection] (ii) is change[d] from an "or" to an "and" to correct an error in the bill as it was originally passed. Congress' intent was that in order for an organization or business to recover under the EAJA it must meet both net worth and employee limitation requirements. This is accurately portrayed in Section 504 and the change clarified the previously confused situation.

S.Rep. No. 586, 98th Cong., 2nd Sess. 20 (1984). Although the bill was vetoed, Congress's action obviously supports a conjunctive reading of subsections (ii) and (iii) to the limited extent that such material is relevant.[7]

We note also that, although this passage does not mention section 501(c)(3) entities directly, it states that Congress intended to require both "businesses" and "organizations" to qualify under both provisions in order to receive fees. This broader language is inconsistent with the Church's argument that Congress intended to require only businesses, or charitable organizations acting in a business capacity, to meet both the net-worth and the employee limits.

### F. The Broad Purposes of the Act

Finally, we might draw upon the broad purposes of the Act in our effort to divine the intent of Congress. See, e.g., Henry v. George Hyman Construction Co., 749 F.2d 65, 76–77 (D.C.Cir.1984). It is undisputed that Congress intended by its passage of the Act to broaden significantly the number of cases in which fees could be awarded against the federal government. See H.R.Rep. No. 1418, at 9. It is equally true, however, that the language of the Act, as with the language of any waiver of sovereign immunity, is to be construed narrowly. See Ruckelshaus v. Sierra Club, 463 U.S. 680, 685, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983); Nichols v. Pierce, 740 F.2d 1249, 1255 (D.C.Cir.1984) (narrowly construing definition of which suits were "pending," and thus may involve fee awards, at time of passage of Equal Access to Justice Act); Action on Smoking & Health v. CAB, 724 F.2d 211, 225 (D.C.Cir. 1984) (strictly construing 30-day time limit for submission of fee request under Equal Access to Justice Act); see also 747 F.2d 1469, 1475 (D.C.Cir.1984) (waiver of sovereign immunity against fees in Title VII action is to be strictly construed); In re Jordan, 745 F.2d 1574, 1576 (D.C.Cir.1984) (waiver of sovereign immunity against attorney's fees in Ethics in Government Act is to be strictly construed). The opposition of these principles, one to the other, makes it of limited use for us to turn to arguments of general purpose.

Nonetheless, one clear purpose that Congress had in subsection (d), though not necessarily in the rest of the Act, was to limit the beneficiaries of subsection (d) to those entities otherwise unable to defend themselves in suits by the government without greatly straining their resources. See supra p. 1082. The proxies that Congress chose to measure this strain were net worth and number of employees. As the discussion above of the congressional hearings shows, supra at p. 1087, requiring an entity only to meet either the net-worth or the number-of-employees limits is a less effective way to restrict the award of fees to small entities than is requiring an entity to meet both criteria. Reading subsections (ii) and (iii) disjunctively would allow entities with thousands of employees but a temporarily low net worth, or with few employees but a

---

**6.** The bill as passed by Congress dropped subsection (iii), and inserted its 500-employee limit into subsection (ii) joined to the net-worth requirement with an "and." See 130 Cong.Rec. at S14,387. The bill as reported by the Senate committee retained the 500-employee limit in a separate subsection (iii).

**7.** The bill containing the change was pocket-vetoed by the President on grounds unrelated to the issue before us. See 20 Weekly Comp.Pres. Docs. 1814 (Nov. 8, 1984). We do not believe that this presidential inaction negates the limited insight that the bill provides into Congress's intent with respect to the statute at issue here.

huge net worth, to benefit from subsection (d). We find it difficult to reconcile Congress's intent to benefit entities with limited resources with an interpretation of subsection (d) that would allow companies with $100 million net worth, and the attendant power to command legal resources with little burden, to benefit from that subsection. Under a conjunctive view of subsections (ii) and (iii), in contrast, only those entities unable to command either the resources available to those with a high net worth or a large payroll can benefit from subsection (d). We thus believe that a conjunctive reading of subsections (ii) and (iii) better serves Congress's specific intent to limit the beneficiaries of subsection (d) to entities with limited resources.

### G. *Summary*

■ We are persuaded by our examination of the sources of congressional intent that Congress passed the Act with the intention that subsections (ii) and (iii) be read conjunctively—that is, that the "or" joining the two subsections should be given the meaning more clearly conveyed by the word "and." The committee reports and the legislative hearings on the matter clearly support this reading. The post-enactment action of Congress in changing the relevant "or" to "and," accompanied by a report that the change was to correct an earlier error of drafting, also clearly supports a conjunctive reading of subsections (ii) and (iii). The overall balancing that Congress drew in subsection (d) between awarding fees and limiting the largesse of the Act to entities with minimal resources similarly supports a congressional intent to require an entity to meet the requirements of both subsections (ii) and (iii) before receiving fees under the Act. Of the sources of congressional intent that we have examined, only the definition of "party" for the purposes of administrative proceedings, and its legislative history, does not clearly support a conjunctive reading of subsections (ii) and (iii). Even this source is simply of uncertain import for our purposes; it does not affirmatively undermine our inter-

pretation. We must therefore conclude, in light of the cautions sounded in *De Sylva* and *Moore* against reading an "or" in a statute without careful examination of the legislative history, that subsections (ii) and (iii) are to be read conjunctively.

We would note also that the single federal appellate court which has directly faced this same issue is in agreement with our ruling. In *Missouri Pacific Truck Lines, Inc. v. United States*, 746 F.2d 796 (Fed. Cir.1984), the fee-seeking appellant had alleged assets of less than $5 million (and thus a net worth of less than $5 million) but was found to have more than 500 employees. 746 F.2d at 797. The facts of *Missouri Truck Lines* thereby necessitated a different outcome to the case depending upon whether the court read subsections (ii) and (iii) conjunctively or disjunctively.

After a brief examination of the legislative history and the purpose behind the Act, the court concluded that entities must meet the requirements of both subsections (ii) and (iii) in order to qualify for fees:

> This [legislative] history demonstrates that Congress intended to limit fees and expenses to small businesses with a net worth of not more than $5 million and with nor more than 500 employees. In view of the legislative purpose of helping small business to overcome the deterrent effect the costs of litigation may have in precluding them from vindicating their rights against the government, Congress cannot have intended to permit a corporation with a net worth of $100 million but with only 490 employees to recover fees under the Act. Construed in light of its legislative history and purpose, the statute provides for two categories of eligible parties: individuals whose net worth does not exceed $1 million and entities (1) with a net worth not in excess of $5 million and (2) with not more than 500 employees.

*Id.* at 798. The two decisions cited by the Church as support for a disjunctive reading of subsections (ii) and (iii) did not squarely

face the issue here.[8] We believe, therefore, that the balance of previous courts' interpretation favors the reading of subsection (d) that we adopt here.

## IV

There is no dispute that the Unification Church provides in-kind and cash compensation, in exchange for service to the Church, to cover 7,000 individuals. The record is unclear as to the precise duties of those individuals. The District Court held all those individuals to be employees for the purposes of subsection (iii), and therefore that, under its conjunctive reading of subsections (ii) and (iii), the Unification Church was ineligible for fees because it had more than five hundred employees.

The Church argues on appeal that, even if subsections (ii) and (iii) are read conjunctively, the Church does not have 500 "employees" for purposes of the Act. Given that the Church automatically qualifies under subsection (ii) as a section 501(c)(3) organization, the qualification of the Church under subsection (iii) as well would mean that the Church would qualify for fees under subsection (d). Appellants cite a case, which we consider factually quite distinct from the case before us, for the proposition that the relationship between the Church and its members is not, for purposes of the issues there involved, that of employer-employee. *See Turner v. Unification Church*, 473 F.Supp. 367, 377 (D.R.I.1978) (plaintiff not "employee" for purposes of Fair Labor Standards Act, where plaintiff "never contemplated any monetary or tangible compensation" or "expected any compensation in any form" from Church), *aff'd*, 602 F.2d 458 (1st Cir. 1979). In addition, the Church states that

---

**8.** In *S & H Riggers & Erectors, Inc. v. Occupational Safety & Health Review Comm'n*, 672 F.2d 426 (5th Cir.1982), the court was apparently not faced with any dispute over whether the company seeking fees was a "party" under the Act. Rather, the issues involved whether the administrative proceedings involved fell under the Act at all, whether the nominal defendant could be charged for fees when another party had handled the litigation, and whether the government's position was substantially justified. The court did mention the definition of "party" in passing:

"Party" is defined to exclude larger companies and wealthier individuals: A "party" is an individual with a net worth of $1 million or less, a company with a net worth of $5 million or less, *or* a company with 500 employees or less. [28 U.S.C.] § 2412(d)(2)(B). "Party" appears to be defined differently in the legislative history and in the companion provision, 5 U.S.C. § 504(a) ... to include only companies with net worth of $1 million or less *and* 500 employees or less.

672 F.2d at 427 n. 1 (emphasis in original). Quoting only the first sentence, appellants argue that the *Riggers* court held that subsections (ii) and (iii) should be read disjunctively.

This argument fails for at least two reasons. First, the *Riggers* court nowhere mentions that the appellants in that case would qualify under one interpretation of the relationship between subsections (ii) and (iii) but not under the other, nor even that the parties contested the issue. We cannot therefore assume that the Fifth Circuit actually reached a decision on the issue of the relationship between the two subsections.

Second, even if we were to assume that the *Riggers* court decided the issue without discussing the facts in its opinion, we could not be sure from its two-sentence discussion just which way it ruled. The *Riggers* opinion simply states two possible interpretations of the two subsections, and the obvious sources for each reading, without stating which interpretation it finds more persuasive or citing any cases that resolve a similar issue.

In *Citizens Council of Delaware County v. Brinegar*, 741 F.2d 584 (3rd Cir.1984), the court was called upon to determine whether a local governmental body could receive fees under the Act. In determining that such entities were ineligible for fees, the court examined both subsection (ii) and subsection (iii). 741 F.2d at 589–92. One could infer from this treatment that the court considered the relationship between the two to be disjunctive. If the court read subsections (ii) and (iii) conjunctively, it would be unnecessary to reach qualification under subsection (iii) to decide the case once the court had decided that governmental entities were not eligible under subsection (ii). Nonetheless, it is also true that the court's holding that governmental entities are not eligible under either provision would make it unnecessary for the court to reach the issue of whether the subsections are to be read conjunctively or disjunctively. If governmental entities cannot qualify under either subsection, then obviously they cannot qualify even under the more generous, disjunctive reading. We thus cannot consider the fact that the *Citizens Council* court discussed both subsection (ii) and subsection (iii) to be a definitive indication that the two subsections should be read disjunctively.

it pays no employment taxes because its members are not considered "employees" for this purpose. *See* Appellant's Brief at 36–37.

The District Court characterized the Church's reasoning as inconsistent with the purpose of its underlying claim:

Th[is] argument conveniently ignores the rationale of this entire litigation which turned upon the alien plaintiffs' status as laborers seeking permission to reside in the U.S. to work at jobs for which the Secretary of Labor had certified a dearth of U.S. citizens qualified and available to perform the same work.

574 F.Supp. at 95 (footnote omitted).

The relevant immigration statute uses the word "worker" or even simply "alien" rather than the word "employee." *See* 8 U.S.C. §§ 1182(a)(14), 1153(a)(6) (1983). The Church argues that "worker" has a broader meaning than "employee," that seeking admission of "workers" therefore need not also be seeking admission of "employees," and that its "workers" are not "employees." As is evident in other contexts, to say that not all those who labor on behalf of an entity are its "employees" is not preposterous. *See Phoenix Savings & Loan v. Aetna Casualty & Surety Co.,* 427 F.2d 862, 871 (4th Cir.1970) (director of company is not necessarily its employee for purposes of bond protecting corporations against malefactions of its "employees"); *see also Spirides v. Reinhardt,* 613 F.2d 826, 831–32 (D.C.Cir.1979) (whether individual is "employee" or "independent contractor" for purposes of Title VII requires "[c]onsideration of all of the circumstances surrounding the work relationship"). The District Court was therefore somewhat hasty in stating that the Church cannot seek admission of workers under the immigration statutes and then attempt to classify them as non-employees under the Equal Access to Justice Act.

In addition to its purely logical grounds for concluding that the relevant Church personnel were "employees," however, the District Court concluded on the basis of a deposition given by the Church's treasurer that the relevant "relationship ... resembles the typical employer-employee relationship in all respects save for compensation in kind rather than specie." 574 F.Supp. at 95 n. 5. The Church provides for the "essential needs" of its 7,000 "core" members, who generally hold no other employment. *See* Deposition of Steven Jares, Aug. 22, 1983, at 15–16, 22, *reprinted in* Supplemental Appendix for the Appellee at 15–16, 18. We believe that these facts are sufficient to uphold the District Court's finding that the relationship between the Church and its core members is that of employer-employee for the purposes of the statute at issue in this case. *Cf. Tony & Susan Alamo Foundation v. Secretary of Labor,* —— U.S. ——, ——, 105 S.Ct. 1953, 1961, 85 L.Ed.2d 278 (1985) (workers at commercial business owned by religious group are "employees" under Fair Labor Standards Act despite being compensated in kind).

Congress's limitation on the scope of the Act also supports the District Court's interpretation of "employee." Congress desired to limit the award of fees to entities that would otherwise be greatly burdened by the costs of litigation. *See supra* pp. 8–9, 18–20. They made a partial exception to that requirement in allowing section 501(c)(3) organizations to qualify for fees regardless of net worth, but Congress did not extend that exception to section 501(c)(3) organizations with large numbers of employees. *See supra* pp. 15–25. The Church has the resources to meet all the essential needs of thousands of workers; Congress wished to limit fees under subsection (d) to entities with resources insufficient to support more than 500 employees.

*Affirmed.*