GERMANO–MILLGATE TENANTS ASSOCIATION, et al., Plaintiffs,

v.

Honorable Henry CISNEROS, Defendant.

No. 93 C 319.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 10, 1993.

Thomas Edward Johnson, Phillip Hallett Snelling, Johnson, Jones & Snelling, William John Gigler, Douglas J. Antonio, Sugar, Friedberg & Felsenthal, Chicago, IL, and E. Grey Lewis, McDermott, Will and Emery, Washington, DC, for plaintiffs.

Linda A. Wawzenski, U.S. Attorney's Office, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

United–Germano–Millgate Limited Partnership ("Partnership") has moved for an award of fees (aggregating $69,636.84) and additional costs (amounting to $252) under the Equal Access to Justice Act ("EAJA," 28 U.S.C. § 2412(d)).[1] In response the United States (as the party holding the purse strings, although the named defendant in the underlying action has been Secretary Henry Cisneros of the United States Department of Housing and Urban Development) has not disputed either Partnership's status as a "prevailing party" for EAJA purposes (Section 2412(d)(1)(A)) or the reasonableness of the amounts claimed by Partnership, nor does the United States argue that no award should be made because "the position of the United States was substantially justified or ... special circumstances make an award unjust" (id.).

Instead the government focuses its fire on Partnership's claimed lack of qualification as a "party" entitled to make an EAJA claim (the relevant definition of "party" is in Section 2412(d)(2)(B)) because Partnership assertedly "has not demonstrated that it has incurred fees, or that it will benefit from an award of fees" (Government Sept. 29, 1993 Mem. 5). According to the United States,

the real parties in interest in seeking to recover the fees are A. Bruce Rozet ("Rozet") and Deane Earl Ross ("Ross"), each of whom is concededly ineligible for any EAJA award because he has a net worth in excess of $2 million (the figure set for individual EAJA claimants by Section 2412(d)(2)(B)(i)).[2] With the parties finding themselves at loggerheads on that real-party-in-interest issue, this Court allowed discovery to be taken on the subject. Now each side has tendered its final submissions, and Partnership's motion is ripe for decision.

It is the United States' position that the decision in *Unification Church v. INS,* 762 F.2d 1077 (D.C.Cir.1985) compels the denial of Partnership's motion (although there are more recent cases on which the government relies, notably *National Truck Equip. Ass'n v. National Highway Safety Admin.,* 972 F.2d 669 (6th Cir.1992), those cases continue to apply the same principles as *Unification Church* ). There is some other case law under EAJA that appears to erect a somewhat lower hurdle for an EAJA claimant than does *Unification Church,* but that decision certainly presents an extensive and thoughtful analysis of the subject—and because this Court resolves the substantive application of *Unification Church* against rather than for the United States in any event, there is no need to parse the cases to see whether a less demanding test should be employed here.

In material part the United States has operated under a misperception that has been cleared up only by the most recent submissions: It has believed and argued that the law firm handling the case had never billed Partnership for fees—that all the firm's bills had rather been rendered to Associated Financial Corporation ("AFC"), a company owned by Rozet and Ross. But in fact Partnership has, in the course of discovery, provided to government counsel two checks issued by Partnership to the law firm, amounting to more than $62,735.

Another misapprehension on the government's part (and a matter that had troubled

---

1. All further references to subparts of the EAJA statute will simply take the form "Section—."

2. As for Partnership itself, there is no question that *its* net worth is below the $7 million disqualifying ceiling in Section 2412(d)(2)(B)(ii).

this Court seriously until the question was cleared up) has led to the United States laying heavy emphasis on the fact that Partnership's 1992 financial statements, when audited by independent certified public accountants, showed none of the legal fees that are now sought to be recovered. But it turns out that the audit covered the operations of the *project*—the real estate known as the Germano–Millgate Apartments—and not the operations of *Partnership* itself. Because the fees now in dispute were Partnership expenses and not project expenses, they were not properly includable in the project's financial statements to begin with. Accordingly no inference at all may properly be drawn from the absence of the fees from the audit.

Nor is any significance to be attributed to the extent to which the amounts for legal services were earlier billed to and paid by AFC on an interim basis. All of the HAP contract payments that have flowed from Partnership's success in this litigation are paid to and for the benefit of Partnership and the apartment project and its tenants—indeed, the government does not quarrel with the fact that the recovery of such payments was the reason that this lawsuit was brought to begin with. Since March of this year Partnership has been charged for all prior as well as all current services associated with this litigation—it and *not* AFC (and certainly not Rozet and Ross) will receive the benefit of any award by this Court.

■ Another matter on which the government seeks to lay stress is the absence of a written engagement agreement between Partnership and the law firm handling the case. Written contracts are not of course a prerequisite to the establishment of lawyer-client relationships even in the most important and extensive areas of representation: Though the practice of law has changed in the time since this Court left it to take the bench, the number of engagement letters that this Court's law firm entered into during the three decades that this Court was a partner in that firm could be counted on the fingers of both hands (even though the firm's practice encompassed representation of stock-exchange-listed and other publicly-held companies as well as closely-held enterprises, and even though for clients of every type the firm's representation involved the handling of extremely large-scale transactions and litigation). This Court has found nothing in the parties' evidentiary submissions or in the arguments proffered by the parties to question the bona fides of the fee arrangements between the law firm and Partnership as its client, notwithstanding the absence of a formal written engagement agreement.

This is not at all a case like *Unification Church*, where the individual plaintiffs had an arrangement that essentially made them the litigation fronts for the Church—with the Church being "the only 'real party in interest' with respect to fees" (762 F.2d at 1081). As the Court of Appeals described that arrangement (*id.* at 1082):

> Whatever the outcome of our consideration of fees here, then, the individual appellants will not pay the fees. If we deny fees, the Church will pay the fees. If we award fees, the INS will pay the fees. The Church is the beneficiary of any award of fees, not the individual appellants, and thus the Church can fairly be characterized as the real party in interest.

But the situation described by the Court of Appeals there was not one in which the individuals would have had any real-world personal liability to reimburse the Church for the fees if there were no EAJA award and if Church had then had to pay the fees to the lawyers in the first instance. As the term "real party in interest" plainly connotes, the fact that someone simply advances funds in payment of fees does not resolve the matter if someone else must realistically bear the burden (in this example, via reimbursement). And on the record in this case, that is Partnership's responsibility even as to any fees originally advanced by AFC, to say nothing of the more than $62,000 in fees that Partnership has paid directly. In sharp contrast to *Unification Church*, then, the "real party in interest" here is truly Partnership—and not Rozet or Ross or the company owned by them.

Accordingly Partnership's motion is granted. This Court orders the United States to pay to Partnership, under the mandate of

236

EAJA, the sum of $69,636.84 in fees and $252 in costs.