REYNALDO G. GARZA, Circuit Judge,
dissenting:
The majority would allow a trade association representing billion dollar corporations to receive an award of attorneys’ fees under the Equal Access to Justice Act (“EAJA”). Because such a ruling ignores the intent of Congress to lessen the burden for small *583 economic entities to seek review of or defend against unreasonable governmental actions, I respectfully dissent.
The majority relies on a plain-meaning approach to conclude that the National-American Wholesale Grocers’ Association/International Foodservice Distributors Association (“NAWGA”) has met the eligibility requirements for attorneys’ fees under EAJA, 28U.S.C. § 2412(d)(2)(B)(ii). NAWGA was a prevailing party against the government, had a net worth less than $7 million and fewer than 500 employees, and funded the litigation. At first glimpse, NAWGA apparently qualifies for an award. I agree with the majority that the text is paramount bút I also agree with them that when strict adherence to the words of a statute “[leads] to absurd or futile results,” the Court should “look[ ] beyond the words to the purpose of the act.” United States v. American Trucking Associations, 310 U.S. 534, 543, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345 (1940) (footnote omitted). Even “when the plain meaning [does] not produce absurd results but merely an unreasonable one ‘plainly at variance with the policy of the legislation as a whole,’ ” the Court should “follow[] the purpose rather than the literal words.” Id.
This Court should construe the language of EAJA to “give effect to the intent of Congress.” Id. at 542, 60 S.Ct. at 1063 (footnote omitted). We should avoid an interpretation that violates the intent of Congress to open the court to small economic entities in litigation with the government.[1] Considering the text and purpose, I believe that an award to NAWGA, which is clearly acting on behalf of its megalithic members, is an unreasonable and/or absurd result. In support of my assertion, I would adopt the reasoning and result of a Sixth Circuit decision, National Truck Equip. v. National Hwy. Safety Admin., 972 F.2d 669, 673-674 (6th Cir.1992), which considered the problem currently before this panel.
In National Truck Equip., an association of truck part manufacturers had successfully overturned an agency safety rule on procedural grounds and requested fees under EAJA Id. at 670. The Sixth Circuit concluded that aggregation of the net worth and number of employees of trade association members is required when those associations are primarily representing the interests of their members. Id. at 673. The truck parts association was not entitled to fees because the aggregate net worth and number of employees of its members exceeded the eligibility standards. Id.
Examining the text of EAJA, the Sixth Circuit noted that Congress specifically exempted three types of associations from the net worth requirement (agricultural cooperatives, non-profit organizations and certain local unions). Id. at 673-674. The exemptions chosen suggest that Congress was aware that aggregation could render these types of organizations ineligible.[2] Congress made a policy choice to exempt them from the net worth requirement. While these exemptions *584 do not use the word “aggregation,” legislative history is informative.
Senator DeConcini explained the exemption for agricultural cooperatives in the following way:
In the West, and I suspect in other parts of the country, small farmers often band together to form agricultural cooperatives. They have often been considered as a unit particularly in determining their assets for insurance and borrowing purposes. Such aggregate treatment would cause the whole cooperative to exceed the [then] $5 million limitation.
Reauthorization of EAJA, Hearing Before the Subcomm. on Administrative Practice and Procedure of the Senate Comm, on the Judiciary, 98th Cong., 1st Sess. 17 (April 14, 1983) (emphasis added). While the majority dismisses this piece of legislative history, the Senator’s comment seems to indicate that the net worth of association members should be aggregated unless that type of organization is exempted.[3]
An association such as NAWGA functions like an agricultural cooperative whose members join in common economic efforts. However, Congress provided these cooperatives with exemption from net worth limits to avoid aggregation. Because Congress created waivers expressly for certain groups, we can properly presume that Congress did not intend to exempt all associations from the net worth aggregation requirement; expres-sio unius est exclusio alterius. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 167-68, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993). Congress must thus have intended aggregation of net worth .for other associations.[4] National Truck Equip., 972 F.2d at 674. Presumably, aggregation would still apply to the employee number limit since none of the entities listed in EAJA were granted exemption from that limit.
Supporting the above conclusions are the Model Rules adopted by the Administrative Conference of the United States, applicable in agency adjudications, which interpret virtually identical language to that in 28 U.S.C. § 2412(d)(2)(B). See 5 U.S.C. § 504(b)(1)(B) (costs and fees awards in administrative adjudications). Model Rule 0.104(f) states in part: “The net worth and number of employees of the applicant and all of its affiliates shall be aggregated to determine eligibility.” (emphasis added). The commentary to the rule explains that “[t]he intent of Congress in passing the EAJA was to aid truly small entities rather than those that are part of a larger group of affiliated firms.” Administrative Conference of the United States, Equal Access to Justice Act: Agency Implementation, 46 Fed.Reg. 32900, 32903 (1981).
Model Rule 0.104(g) states: “An applicant that participates in a proceeding primarily on, behalf of one or more persons or entities that would be ineligible is not itself eligible for an award.” 46 Fed.Reg. 32900, 32912 (emphasis added). The commentary to this rule addresses the issue of trade associations as follows:
Trade associations may sometimes become involved in litigation on their own account (e.g., as employers) as well as in the interests of their own membership. On reflection, we believe the best way of handling this situation is through the provision on participation on behalf of others. When a proceeding involves a trade association independent of its own membership, the association’s eligibility should be measured individually like any other applicant’s; when an association is representing primarily the interests of its members, the agency can examine the facts of the particular situation.”
46 Fed.Reg. at 32903.
The Model Rules and commentary discussed above reflect the policy of the statute. One can hardly dispute that the purpose of *585 the Equal Access to Justice Act was “to ease the burden upon small businesses of engaging in litigation with the federal government.” Unification Church v. INS, 762 F.2d 1077, 1082 (D.C.Cir.1985). As the Eighth Circuit noted, “EAJA awards should be available where the burden of attorneys’ fees would have deterred the litigation challenging the government’s actions, but not where no such deterrence exists.” SEC v. Comserv, 908 F.2d 1407, 1415-1416 (8th Cir.1990). See also Pub.L. No. 96-481, § 202, 94 Stat. 2825 (1980) (“It is the purpose of this title — to diminish the deterrent effect of seeking review of, or defending against, governmental action by providing in specified situations an award of attorney fees ... against the United States.”).
Congress was not likely concerned that a trade association wholly financed by its large corporate members would be deterred from litigation. EAJA reveals Congress’s “desire not to subsidize ... the purchase of legal services by large entities easily able to afford legal services.” Unification Church, 762 F.2d at 1083. Under the logic of the majority, any large industrial group (petroleum, automobile manufacturing, etc ...) could set up and fund an association separate from itself that would readily meet EAJA’s limits on net worth and employees even though its individual members or members in the aggregate would not. EAJA was not intended to fund the litigation of corporate Goliaths in the costume of David.
We thus are not compelled to reach the result advocated by the majority. Based on statutory analysis, reference to legislative policy, and commentary in an identical provision in the Administrative Conference Model Rules, I would hold that awarding EAJA fees to NAWGA was improper without consideration of NAWGA’s members’ net worth and number of employees. As the Sixth Circuit stated in Nat’l Truck Equip.,
When businesses have the economic power to pursue litigation against the government without being deterred by the costs, the congressional purposes of the EAJA are undermined by an award to those businesses. The same result occurs when a trade association’s membership also contains a number of companies who can readily afford the costs to protect their own interests.
972 F.2d at 674.
I would reverse and remand for the district court to determine whether NAWGA primarily. represents its own interests or those of its members. If NAWGA is primarily representing the interests of its members, the district court should then aggregate the net worth and employees of those members to determine the association’s eligibility. Given that NAWGA has conceded that it has at least one ineligible member, I suspect that NAWGA would be ineligible for fees.[5]

. NAWGA has admitted on appeal that its members include Supervalu Inc. ($12.57 billion in revenues and 42,000 employees), Fleming Companies, Inc. (sales of $12.93 billion and 22,900 employees), SYSCO Corp. ($8.9 billion and 23,-000 employees), and Kraft Foodservice, Inc. (sales of $120 million and 300 employees). See Standard and Poor’s Register of Corporations, Directors, and Executives 1994 (covering 1993, the pertinent year).

. In 1985, Congress clarified the definition of "party” as it applies to "associations” in § 2412(d)(2)(B)(ii) to exempt certain local unions from the net worth requirement if they are separate from their international union affiliates by law. H.R.Rep. No. 99-120, 99th Cong., 1st Sess. at 17, reprinted in 1985 U.S.C.C.A.N. 132, 146. The House Committee's statement on this provision supports an aggregation requirement:
It is the Committee’s intent that if the local union is to be considered to be a separate labor organization for purposes of the Labor Management Reporting and Disclosure Act of 1959, it should be considered to be a separate organization for purposes of EAJA as well, and the local’s entitlement of fees should be determined without regard to the assets and/or employees of the international union with which the local is affiliated.
Id. Why create an exemption here if the district court is to look merely at a discrete association without considering that association's affiliation. NAWGA is in a similar position to the local union with regard to NAWGA members. NAWGA is its members when it acts solely in their interest. Those members’ net worth and number of employees should be considered in that situation when determining eligibility.

. The analysis imthis dissent is limited to aggregation as it wotdd apply to associations. Whether other entities wotdd be affected by an aggregation rtde is not before us, as noted by the majority.

. Even if the agricultural exemption were insufficient to establish by implication a statutory aggregation rule, at the very least it creates an ambiguity, allowing this Court to consider the policy and purpose of EAJA. The purpose of EAJA is served by an aggregation rule.

. I disagree with the majority that aggregation would be unfair to eligible members of an association. What financial deterrent exists for'a trade group when the members' combined net worth exceeds $7 million or when that group has members with billions in assets? Such a group is likely both willing and able to defend itself against government actions absent EAJA fee awards.