### SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

### COMSERV CORP., Richard P. Daly, Theodore Priem, William Gilster and Thomas A. Johnson, Defendants.

### Civ. No. 3–85–867.

United States District Court,
D. Minnesota,
Third Division.

Nov. 7, 1988.

---

James A. Brigagliano, S.E.C., Washington, D.C., for the SEC.

Roger J. Magnuson and Jeffrey L. Sikkema, Dorsey & Whitney, Minneapolis, Minn., for Thomas A. Johnson.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

This matter is before the court on defendant Thomas A. Johnson's motion for

attorneys' fees and expenses under the Equal Access to Justice Act (EAJA). 28 U.S.C. § 2412. The Securities and Exchange Commission (SEC) sought an injunction against Johnson based on alleged violations of Section 10(b) of the Securities Exchange Act of 1934 and its regulations;[1] and alleged aiding and abetting violations of Sections 13(a) and 13(b)(2) of the 1934 Act and its regulations.[2] After nine days of trial the SEC rested its case. Johnson moved to dismiss under Rule 41(b) of the Federal Rules of Civil Procedure, and the court granted the motion. For the reasons stated below the court also grants Johnson's motion for attorneys' fees and expenses under the EAJA.

*Factual Background*[3]

Comserv Corp. was a computer-software firm with annual revenues of $22 million in 1982. At some point the management of Comserv initiated a massive book-cooking scheme. First, contracts signed in 1983 were backdated to look like they had been signed in 1982—fraudulently fattening up the 1982 balance sheet. Second, Comserv entered into normal contracts, adding revenue to the balance sheet, while at the same time executing secret side agreements with the same customers, giving them the right to repudiate their deals.

Three of the four named defendants participated in this scheme: Richard P. Daly (initially president, chief executive officer, and chief financial officer; later chairman of the board); Theodore Priem (initially executive vice president; later president and chief operating officer); and William Gilster (vice president of sales). Without admitting fault, all three agreed to an SEC injunction against future misconduct. 15 U.S.C. § 78u(d).

The fourth defendant, Johnson, was head of Comserv's accounting department. None of the evidence tied Johnson to this

---

1.  15 U.S.C. § 78j(b) and Rules 10b–5 and 13b2–2 (17 C.F.R. §§ 240.10b–5 and 240.13b2–2).

2.  15 U.S.C. §§ 78m(a) and 78m(b)(2) and Rules 12b–20, 13a–1 and 13a–13 (17 C.F.R. §§ 240.-12b–20, 240.13a–1 and 240.13a–23).

3.  The court made detailed findings of fact and conclusions of law in its ruling on Johnson's motion to dismiss.

fraudulent scheme. Indeed, the other defendants took great pains to conceal their fraudulent activity from the accounting department. Nonetheless, the SEC sought an injunction against future securities violations by Johnson.

*Analysis*

Under the EAJA, "a court shall award to a prevailing party other than the United States fees and other expenses, ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

The SEC opposes Johnson's motion for attorneys' fees and expenses on three grounds. First, the SEC contends that neither Johnson nor Comserv is the real party in interest for purposes of this motion and that the real party in interest does not satisfy the threshold requirements of a prevailing party as defined by the statute. Second, the SEC asserts that its position was substantially justified. Finally, the SEC claims that special circumstances are present in this case that would make an award of attorneys' fees unjust and inequitable.

**I. Prevailing Party**

In pertinent part the EAJA defines "party" as:

(i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) any ... corporation ... the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed ...

28 U.S.C. § 2412(d)(2)(B).

■ It is undisputed that Johnson qualifies as an individual whose net worth does not exceed two million dollars. Similarly, Comserv, which was insolvent and had far fewer than 500 employees at the time the suit was filed, satisfies the statutory requirement. However, the SEC argues that neither Johnson nor Comserv is the real party in interest. The SEC alleges that Johnson is covered by an officer's and director's insurance policy and that under

that policy the National Union Fire Insurance Company (National Union) is liable for any attorneys' fees incurred in defense of this action. The SEC reasons that under the policy's subrogation clause National Union will receive any EAJA award for attorneys' fees. This arrangement makes National Union the real party in interest. Since National Union has more than 500 employees and a net worth greater than $7,000,000 it would be ineligible to receive an award as a prevailing party. The SEC concludes, therefore, that any award of fees would be inappropriate.

This issue is one of first impression in this circuit. Indeed, the court has found no precedent directly on point from any of the federal circuits. Consequently, the major part of the court's analysis will focus on the issue of requirements for a prevailing party under the EAJA.

For authority the SEC cites *Unification Church v. I.N.S.*, 762 F.2d 1077 (D.C.Cir. 1985), in which the Court of Appeals for the District of Columbia Circuit denied an award of attorneys' fees on the grounds that the real party in interest did not qualify under the EAJA. In the case at hand the SEC attempts to stretch the holding of *Unification Church* far beyond its intended reach.

In the *Unification Church* case the Immigration and Naturalization Service had denied applications for permanent resident alien status that had been filed by three resident aliens. The three individuals were members and employees of the Unification Church. Each of the aliens and the Unification Church appealed the INS determination to the district court. The issue of whether the Unification Church was a proper party to the appeal was not raised with the court, and the Unification Church was allowed to be a named plaintiff.

On its face the case at hand differs from *Unification Church* in that National Union is not a named party in the case, nor could it be. The SEC had no power to seek an injunction against National Union for the actions of Johnson and Comserv. In addition, Johnson, Comserv and National Union

took no action to initiate the suit in this case. This contrasts with *Unification Church.* There, "[i]n the underlying case, three individuals and the Unification Church sued to overturn the refusal of the Immigration and Naturalization Service to allow the individual plaintiffs to remain in the United States." 762 F.2d at 1079.

The legislative history of the EAJA indicates that National Union does not fit within the EAJA definition of party. "The definition of 'party' ... includes a 'person' named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party."[4] H.Rep. No. 96–1418, 96th Cong.2d Sess. at 15, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4953, 4984, 4994 [hereinafter *House Report*]. Again, National Union was not named or admitted as a party, the SEC did not seek to name National Union as a party, and the SEC had no right to name National Union as a party. Therefore, the question of whether National Union meets the EAJA threshold requirements has no bearing on the issue of an award of attorneys' fees to the parties against which the SEC brought this action.

The policy considerations behind the EAJA also suggest that the court must look to Johnson and Comserv as the real parties in interest in this case. The House Report reveals that purposes of the EAJA are twofold. On the one hand, the statute "presses the agency to address the problem of abusive and harassing regulatory practices" and "is intended to caution agencies to carefully evaluate their case and not to pursue those which are weak or tenuous." *Id.* at 14, 1980 U.S.Code Cong. & Admin. News at 4993. On the other hand, the EAJA seeks to aid small businesses which lack the resources to challenge agency action adequately. "The bill rests on the premise that certain individuals, partnerships, corporations and labor and other organizations may be deterred from ... defending against unreasonable governmental action because of the expense involved

in securing vindication of their rights." *Id.* at 5, 1980 U.S.Code Cong. & Admin.News at 4984. The House Report emphasizes the disparity between the resources at the disposal of governmental agencies and the tools possessed by small businesses, and it concludes that "there is evidence that small businesses are the target of agency action precisely because they do not have the resources to fully litigate the issue." *Id.* at 10, 1980 U.S.Code Cong. & Admin.News at 4988.

The House Report acknowledges that aiding small businesses to defend their rights is an important government objective. "An adjudication, for example, may show that the policy or factual foundation underlying an agency rule is erroneous or inaccurate." *Id.* Since such activities serve a public purpose, "it is unfair to ask them to finance through their tax dollars unreasonable Government action and also bear the cost of vindicating their rights." *Id.*

Both of the policy objectives underlying the EAJA are implicated in this case. An overzealous SEC has needlessly harassed Johnson by pursuing this litigation all the way to its preordained conclusion. The lack of substantial justification for the SEC's position will be discussed more fully below. However, it is important to note that the EAJA is designed to send a strong message to agencies like the SEC in precisely this kind of case.

In addition, individuals like Johnson and businesses such as Comserv may not be able to afford this type of litigation. They may be coerced into compromising their rights and thereby allow unjust and inequitable agency policies to continue. The SEC argues that neither Johnson nor Comserv have paid the attorneys' fees in this case. Such an argument is flawed for a number of reasons. First of all, the SEC has presented no evidence to rebut the affidavit of Roger Magnuson, one of Johnson's attorneys, which states that he sent all legal bills to Comserv or its successor corporation. Comserv may have paid the

---

**4.** The language cited here applies directly to 5 U.S.C. § 504(b) and relates to agency proceedings. However, the House Report also states that for § 2412, "the definitions of 'fees and expenses,' 'party,' and 'person' are explained under section 3(a) of this bill. (New section 504(b) of title 5)." *House Report* at 18, 1980 U.S.Code Cong. & Admin.News at 4997.

bills itself, turned them over to National Union, or paid them subject to reimbursement from National Union. Nevertheless, this relationship contrasts with the *Unification Church* case. The district court in that case described the fee arrangement in this fashion:

> The affidavit of plaintiffs' counsel of July 27, 1983, discloses that, although he was 'retained' by the individual plaintiffs to represent them before the INS and in this court, his 'arrangement' for payment for his services is solely with the Unification Church for which he has performed like services since April, 1974.

*Unification Church v. INS,* 574 F.Supp. 93, 94 n. 2 (D.D.C.1983), *aff'd* 762 F.2d 1077 (D.C.Cir.1985). Johnson's attorneys had no such arrangement and claim to be unfamiliar with any insurance coverage for attorneys' fees.

More importantly, even if National Union reimburses Comserv for attorneys fees, in an economic sense Johnson and Comserv are the parties who ultimately pay for the legal fees. Any reimbursement by National Union will flow from its obligation under the insurance policy. Comserv paid the premiums on that policy, and those premium payments secured a benefit for Johnson as an officer of the company. In other words the insurance coverage enjoyed by Johnson was a noncash addition to his salary. If Johnson had not been covered by the policy, the cash salary that he would have received probably would have been higher.

The fact remains that the major part of any award of attorneys' fees in this case most likely will end up in the pocket of National Union pursuant to a subrogation clause. National Union will not return Comserv's premium payments, and Johnson will not receive a salary refund. But to deny an award on this basis would frustrate the purposes of the EAJA. Insurance companies would discover that they would not be entitled to subrogation on an EAJA award and would respond by raising insurance premiums to cover the additional risk factor. Some individuals and small businesses, in turn, would find that insurance coverage is too costly and would go without it. Surely this chain of events would undermine the EAJA, which attempts to reduce the deterrent forces that keep small businesses and individuals from vindicating their rights.

In sum, both the purposes underlying the EAJA and the terms of the statute suggest that Johnson and Comserv are the prevailing parties in this case. The *Unification Church* case is not to the contrary. Johnson and Comserv are the real parties in interest, and they deserve an award of attorneys' fees unless the position of the SEC was substantially justified or other special circumstances apply.

## II. Substantial Justification

■ As noted earlier, the EAJA provides for the award of attorneys' fees unless the government's position was "substantially justified." 28 U.S.C. § 2412(d)(1)(A). The Supreme Court recently explained the meaning of the term "substantially justified":

> We are of the view, therefore, that as between the two commonly used connotations of the word "substantially," the one most naturally conveyed by the phrase before us here is not "justified to a high degree," but to a degree that could satisfy a reasonable person. This is no different from the "reasonable basis in both law and fact" formulation ...

*Pierce v. Underwood,* — U.S. —, —, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988).

In granting Johnson's motion to dismiss the court made detailed findings of fact and conclusions of law which will not be repeated here. The court has reviewed those findings for purposes of this motion and determines that the SEC's position with respect to each of its claims against Johnson was not substantially justified. A brief summary of the evidence on each of the allegations is appropriate.

The SEC charged Johnson with recklessly aiding and abetting Comserv in setting up inadequate accounting systems. The SEC theorized that better internal controls would have prevented the fraud. At trial, the SEC put in virtually no evidence to show that Johnson was reckless in setting up Comserv's accounting system. Indeed,

the evidence tended to show the adequacy of the system. Given the dearth of evidence here, the SEC's position was barely tenable, much less substantially justified.

According to the SEC, Johnson failed to investigate and attempted to cover up the gradually unfolding scandal. Johnson was charged with recklessly misleading Comserv's outside auditors and the investing public. In particular, the SEC focused on Johnson's preparation of Comserv's financial statements. The court's bench ruling leaves no doubt that most of the SEC's charges lacked any substance whatsoever. The only serious issues involved the preparation of Comserv's first quarter financial report in 1983. On this one point alone the SEC's position could arguably be characterized as substantially justified.

The SEC also sought injunctive relief against Johnson to prevent future violations of the securities laws. In its December 28, 1987, order denying cross-motions for summary judgment, the court detailed the requirements for an injunction. First, the SEC was required to prove a securities violation. *SEC v. Tiffany Industries, Inc.*, 535 F.Supp. 1160, 1164 (E.D.Mo.1982). Second, the SEC was obliged to demonstrate a reasonable likelihood that Johnson would engage in future violations. *Id.*

To give the parties an objective view of the evidence, the summary-judgment order stated, in dicta, that it appeared as if Johnson had violated the securities law. However, the court made a point of expressing its "serious doubts" that an injunction would be required in a case like Johnson's, even assuming that he violated the law.

Despite this warning, the SEC introduced virtually no evidence at trial to buttress its request for an injunction. In fact, the evidence showed absolutely no likelihood of future violations. The court cannot condemn too strongly the SEC's decision to take this case to trial when it knew that no injunction would be issued. In no way can the SEC's position be described as substantially justified.

III. Special Circumstances

█ In a last ditch effort to avoid liability for attorneys' fees and expenses the SEC argues that special circumstances exist that would make an award unjust and inequitable. Essentially the SEC contends that it was justified in taking action against Johnson merely because Johnson exercised his fifth amendment rights during the initial investigation of Comserv. While it is true that the fifth amendment does not preclude drawing an adverse inference where the privilege is claimed by a party to a civil action, "silence alone would be insufficient to support an adverse decision against one who refuses to testify." *Pagel, Inc. v. Securities & Exchange Commission*, 803 F.2d 942, 947 (8th Cir.1986), *citing Baxter v. Palmigiano*, 425 U.S. 308, 317, 96 S.Ct. 1551, 1557, 47 L.Ed.2d 810 (1976). Clearly, without additional evidence Johnson's silence is not a sufficient basis for the SEC's action. The SEC's final contention is that Johnson could have been more forthcoming during the discovery phase of this action. This court, which presided over discovery as well as the trial, finds these arguments to be wholly without merit.

Accordingly, IT IS ORDERED that Johnson's motion for attorneys' fees and expenses under the Equal Access to Justice Act is GRANTED.