**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BRADLEY K. MORRISON,
              *Petitioner-Appellants,*

              v.

COMMISSIONER OF INTERNAL
REVENUE,

              *Respondent-Appellee.*

No. 06-75332

Tax Court No.
18140-03

OPINION

Appeal from the United States Tax Court

Argued and Submitted
July 14, 2008—San Francisco, California

Filed May 13, 2009

Before: Procter Hug, Jr., Richard A. Paez, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon

## COUNSEL

William E. Taggert, Jr., Taggert & Hawkins, Oakland, California, for petitioner-appellant Bradley K. Morrison.

Eileen O'Connor, Jonathan S. Cohen, Carol Berthel, United States Department of Justice, Washington, DC for respondent-appellee Commissioner of Internal Revenue.

## OPINION

BERZON, Circuit Judge:

" '[A] party who chooses to litigate an issue against the Government is not only representing his or her own vested interest, but is also refining and formulating public policy.' " *INS v. Jean*, 496 U.S. 154, 165 n.14 (1990) (quoting H.R. Rep. No. 96-1418, at 10 (1980)). For this reason, our legal system has adapted to ensure that, in certain circumstances, every citizen is able to defend himself against unjustified government action, free from the financial disincentives associated with litigation. The statute here at issue, 26 U.S.C. § 7430, provides such assurance to taxpayers.

Appellant Bradley K. Morrison successfully challenged a Notice of Deficiency of income tax issued against him by the Internal Revenue Service ("IRS"). Morrison applied for, but was denied, fees. The Tax Court held that because Caspian Consulting Group, Inc. ("Caspian"), a separate entity and

Morrison's former employer, paid all fees associated with the litigation, Morrison did not "pay" or "incur" fees, as required by § 7430.

We hold that an individual may "incur" fees even if those fees are paid initially by a third party. We therefore reverse the Tax Court's holding to the contrary and remand for further proceedings consistent with this opinion.

## I.    Background

Morrison and Nariman Teymourian formed an intellectual property management partnership, later reorganized as Caspian, a California corporation, of which Morrison owned 40% and Teymourian 60%. Morrison served as an officer and director at Caspian, and was also employed in a technical capacity. In July 2002, Morrison and Teymourian executed an agreement pursuant to which Morrison sold his interest in Caspian to Teymourian and resigned from both his officer and director positions and his employment with Caspian.

In November 2001, before Morrison resigned, the IRS began an audit of Caspian's 1999 and 2000 tax returns. Its examination soon expanded to include separate audits of Morrison's, Teymourian's, and Teymourian's wife's personal tax returns for the same time period. Eventually, the IRS issued Notices of Deficiency to Caspian, Morrison, Teymourian, and Teymourian's wife in connection with their 1999 and 2000 tax returns. The notices raised several issues, the most significant of which was whether loans made by Caspian to its shareholders, including Morrison, in 1999 and 2000 were taxable as constructive dividends. The parties tried but were unable to settle this dispute.

In October 2003, Morrison petitioned the Tax Court for a redetermination of the deficiencies. Morrison's case was consolidated for trial with Caspian's related petition for redetermination, and both parties retained the same law firm —

Taggart & Hawkins — as counsel for the litigation. The firm billed all of its hours to an account entitled "Caspian," and Caspian paid all of the associated fees. Both Caspian and Morrison prevailed on their petitions, and each filed a motion for an award of the litigation costs, including attorneys' fees, under 26 U.S.C. § 7430.

Section 7430 provides: "In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for . . . reasonable litigation costs incurred in connection with such court proceeding." *Id.* § 7430(a)(2). The statute further specifies that "reasonable litigation costs" include "reasonable fees *paid or incurred* for the services of attorneys in connection with the court proceeding." § 7430(c)(1)(B)(iii) (emphasis added).

Morrison supported his motion with, among other documents, an affidavit from his attorney, William E. Taggart, Jr., who stated that he had provided legal services on behalf of both Caspian and Morrison. The Tax Court found Caspian eligible to recover fees under § 7430 and awarded Caspian fees equal to the proportion of time Taggart & Hawkins spent on its case. The court denied Morrison's motion, however, reasoning that "[b]ecause Caspian, a separate entity, paid all litigation costs in issue, petitioner did not . . . actually pay or incur any litigation costs." *Morrison v. Comm'r*, T.C. Memo. 2006-103 (2006).

Morrison filed a motion for reconsideration of his request for attorneys' fees, submitting additional evidence along with the motion.[1] The Tax Court denied the motion, finding that

---

[1]We discuss Morrison's specific assertions regarding his arrangement with Caspian in greater detail later in this opinion. *See* discussion *infra* Part III.

Morrison "did not introduce newly discovered evidence that could not have been introduced before the filing of [the] Opinion," and, further, that the new evidence "simply contradicted earlier filings."[2] The Court then entered its final order denying Morrison's recovery under § 7430. Morrison timely appealed.

## II.   Analysis

[1] The U.S. Tax Code permits a discretionary award of litigation costs, including attorneys' fees, to the prevailing party in any civil tax proceeding brought by or against the United States. 26 U.S.C. § 7430(a).[3] A "prevailing party" is a party that "has substantially prevailed with respect to the amount in controversy" or "with respect to the most significant issue or set of issues presented." § 7430(c)(4)(A)(i). A party is not treated as a "prevailing party," however, if "the United States establishes that the position of the United States in the proceeding was substantially justified." § 7430(c)(4)(B)(i). The purpose of § 7430 is two-fold: "[(1)] to 'deter abusive actions and overreaching by the Internal Revenue Service and . . . [(2) to] enable individual taxpayers to vindicate their rights regardless of their economic circumstances.' " *Huffman*, 978 F.2d at 1146 (quoting H.R. Rep. No. 97-404, at 11 (1981)).

[2] Not all "prevailing part[ies]" are eligible to receive fees under § 7430, however. To qualify for a fee award, the petitioner must be "(i) an individual whose net worth did not

---

[2]The Tax Court was apparently concerned that Morrison's original motion for fees suggested that the fees were paid as consideration for a separate stock buyout agreement, while the later motion for reconsideration suggested that Morrison remained obligated to repay the fees at a future date. *See* discussion *infra* Part III.

[3]A decision by the Tax Court denying an award of attorneys' fees is reviewed for abuse of discretion. *Huffman v. Comm'r*, 978 F.2d 1139, 1143 (9th Cir. 1992). The Tax Court's conclusions of law are reviewed *de novo*. *First Charter Fin. Corp. v. United States*, 669 F.2d 1342, 1345 (9th Cir. 1982).

exceed $2,000,000 at the time the civil action was filed, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed . . . ." *See* § 7430(c)(4)(A)(ii) (referring to 28 U.S.C. § 2412(d)(1)(B), (2)(B) (1986)). In addition, the prevailing taxpayer must have "exhausted the administrative remedies available to [him] within the Internal Revenue Service," § 7430(b)(1), and cannot have "unreasonably protracted" the proceedings that generated the attorneys' fees. § 7430(b)(3). If each of these prerequisites is met, the taxpayer "may be awarded . . . reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding." § 7430(a), (c)(1)(B)(iii).

The Tax Court denied Morrison's request for fees solely on the grounds that he had not "actually pa[id] or incur[red]" such fees because Caspian paid them on his behalf, and did not address § 7430's other eligibility requirements. Morrison had indisputably not "paid" the fees at the time he sought to recover them. Thus, the question before us is whether Morrison had "incurred" the fees. Determining whether, and, if so, under what circumstances a taxpayer who has not yet paid any attorneys' fees has nonetheless "incurred" them is an issue of first impression in this Circuit.

As always, "[o]ur analysis begins with the language of the statute." *Leocal v. Ashcroft*, 543 U.S. 1, 8 (2004). Because § 7430 does not provide a definition for the word "incur," we look to other sources to discern its "ordinary or natural" meaning. *Id.* at 9.

*Black's Law Dictionary* defines incur as to "become liable or subject to, to bring down upon oneself, as to incur debt, danger, displeasure and penalty, and to become through one's own action liable or subject to." *Black's Law Dictionary* at

768 (6th ed. 1990). Using this definition, the Tax Court held that Morrison "did not 'bring down upon' himself any debt," and therefore did not "incur" fees, because Caspian, not Morrison, had paid all of the litigation costs at issue. The court so held despite its recognition that Morrison asserted an obligation to pay Caspian any fees awarded.

This interpretation of the statute, and of the *Black*'s definition of "incur," is too narrow to give effect to the statute as a whole. *Black*'s definition does not tell us whether an obligation to pay later, either absolute or contingent, can result in "incurring" a debt. Nor does it tell us whether an obligation to pay a third party who has undertaken to pay one's debts counts.

**[3]** Further, the Tax Court's emphasis on the fact that Caspian had fronted the fees largely conflates "paid" and "incurred," by effectively barring recovery to any prevailing party who cannot demonstrate that he paid his attorneys' fees directly. *See Azure v. Morton*, 514 F.2d 897, 900 (9th Cir. 1975) ("As a general rule, the use of a disjunctive in a statute indicates alternatives and requires that they be treated separately."). We hold instead that a taxpayer can "incur" attorneys' fees if he assumes either: (1) a noncontingent obligation to repay the fees advanced on his behalf at some later time; or (2) a contingent obligation to repay the fees in the event of their eventual recovery.

The first half of this definition is straight-forward: where a party assumes an obligation to repay fees that are advanced on his behalf regardless of whether those fees are ultimately recovered, he certainly "becomes liable or subject to" the lender and "brings down upon" himself a debt. In such a situation, therefore, the taxpayer has certainly "incurred" fees. That the debt is to a third party who has fronted the fees rather than to the attorneys who provided the services fully comports with the statutory language, which does not specify to whom the debt for reasonable fees must be paid or owed. *See*

*Thompson v. Comm'r*, 72 T.C.M. (CCH) 1036 (1996) (holding that where a petitioner does not pay her attorney directly, she can still "incur" fees so long as she assumes an obligation to repay the party who advanced the fees on her behalf).

**[4]** The more difficult question, and the one we face today, arises when a party's obligation to repay fees is contingent upon the party's successful recovery of fees under the statute. Courts are divided on the issue. *Compare, e.g.*, *Ed A. Wilson, Inc. v. General Servs. Admin.*, 126 F.3d 1406, 1407 (Fed. Cir. 1997) (holding that the petitioner "incurred" fees and expenses paid on his behalf by a third party even though the petitioner's obligation to repay that third party was contingent on a recovery of those fees),[4] *with SEC v. Comserv Corp.*, 908 F.2d 1407, 1414 (8th Cir. 1990) (holding that a contingent obligation to repay fees does not constitute "incurr[ing]" fees). We find more persuasive the reasoning of courts that have awarded fees where the repayment obligation is contin-

---

[4]The plaintiff in *Wilson* sought fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Because of the similarity between the language of EAJA and the language of § 7430, we have repeatedly held that "[t]he reasoning employed by the courts under the attorney's fees provision of the Equal Access to Justice Act applies equally to review under section 7430." *Huffman*, 978 F.2d at 1143; *see also Estate of Merchant v. Comm'r*, 947 F.2d 1390, 1393 (9th Cir. 1991) ("[M]ost of the Supreme Court's reasoning [under the EAJA] applies equally to review under [§ 7430]."); *Oliver v. United States*, 921 F.2d 916, 922 (9th Cir. 1990) ("There is little dispositive difference between section 7430 and the EAJA.").

The language of the two statutes does differ slightly as here relevant, but this difference supports rather than detracts from the interpretation we adopt today. Unlike EAJA, § 7430 does not specify that the fees "incurred" must be "incurred" *by* the prevailing party. *Compare* 26 U.S.C. § 7430(c)(1)(B)(iii) ("reasonable fees paid or incurred for the services of attorneys"), *with* 28 U.S.C. § 2412(d)(1)(A) (EAJA) (the prevailing party is entitled to "fees . . . incurred *by that party*") (emphasis added). If anything, § 7430's deviation from the limiting language of EAJA suggests that Congress intended for § 7430 to apply more broadly than EAJA with regard to the collection of fees initially paid by third parties.

gent, and so hold that a taxpayer can "incur" attorneys' fees under § 7430 even if he assumes only a contingent obligation to repay them.

Although *Wilson* involved an award of fees under EAJA rather than § 7430, the Federal Circuit's cogent explanation of the reasons for permitting recovery in the contingent-obligation context is equally applicable to § 7430. In that case, the plaintiff, a government contractor, sought recovery of attorneys' fees that had been paid by its insurance company. *Wilson*, 126 F.3d at 1407-08. Although the contractor was required to repay the insurance company only in the event it recovered fees, the court nonetheless held that the contractor had incurred those fees within the meaning of the statute and so could collect fees from the government defendant. *Id.* at 1407, 1411.

In reaching this holding, the court concluded that "[d]isallowing Wilson attorney fees would neither remove the financial disincentives of litigating against the government nor deter the government's unreasonable denial of minor claims filed by its small businesses contracting partners." *Id.* at 1410. With respect to the first point, the court noted that, without the possibility of fee recovery, insurance companies would raise their premiums. *Id.* As a result, "[t]he small business would have to decide whether it is worth the increased premiums, which it will incur regardless of whether it prevails, to challenge the government." *Id.* at 1411. "[T]he denial of attorney fees would[, in other words,] reintroduce the cost of litigation as a factor in the small business' decision whether to contest governmental action it deems unreasonable." *Id.*

In addition, the court was concerned that a refusal to award fees would provide the government with an "incentive to deny meritorious claims, thereby requiring the small business to litigate." *Id.* at 1410. This incentive would arise, the court observed, because the government would know that any time a small business had insurance, it could "deny the [small busi-

ness'] claim and litigate any appeal of the denial without any pecuniary risk." *Id.* Thus, "[t]he government could act unreasonably not only in its initial denial of the small business' claim but also during the litigation of the appeal, confident in the knowledge that it will be exposed to no attorney fee award." *Id.* To avoid these adverse results, the court in *Wilson* awarded fees to the insured petitioner who was obligated to repay the fees to the insurer, bolstered by its desire to ensure that "a party [never has] to choose between acquiescing to an unreasonable Government order [and] prevailing to his financial detriment." *Id.* at 1411 (quoting *INS v. Jean*, 496 U.S. 154, 165 n.14 (1990)).

Similar concerns have motivated this and other courts to award attorneys' fees to petitioners represented by pro bono counsel in related legal contexts.[5] *See, e.g.*, *Dennis v. Chang*, 611 F.2d 1302, 1306 n.12 (9th Cir. 1980) (42 U.S.C. § 1988) ("Legal services organizations often must ration their limited financial and manpower resources. Allowing them to recover fees enhances their capabilities to assist in the enforcement of congressionally favored individual rights."); *see also Cornella v. Schweiker*, 728 F.2d 978, 986-87 (8th Cir. 1984) (EAJA) ("If attorneys' fees to pro bono organizations are not allowed in litigation against the federal government, it would more than likely discourage involvement by these organizations in such cases, effectively reducing access to the judiciary for indigent individuals."); *Hairston v. R&R Apartments*, 510 F.2d 1090, 1092 (7th Cir. 1975) (awarding fees to pro bono counsel under 42 U.S.C. § 3612(c), the Fair Housing Act's fee shifting provisions) ("When free legal services are provided there may be no direct barrier to the courtroom door, but if no

---

[5]Section 7430 expressly permits a court to award reasonable fees to an attorney who represented a qualifying "prevailing party" pro bono. *See* § 7430(c)(3)(B). The fact that § 7430, unlike EAJA and other fee shifting statutes, expressly allows for such recovery further demonstrates that Congress was concerned with broadly assuring that the taxpayer has access to representation.

fees are awarded, the burden of the costs is placed on the organization providing the services, and it correspondingly may decline to bring such suits and decide to concentrate its limited resources elsewhere, thereby curtailing the forceful application of the [Fair Housing] Act that Congress sought. Thus, the denial of fees in this situation indirectly cripples the enforcement scheme designed by Congress.").

The logic of *Wilson* and the pro bono cases applies with equal force in situations in which a third party has agreed to pay a taxpayer's attorneys' fees with the expectation that it will be reimbursed from any recovery. First, just as the denial of fees would discourage insurance companies and pro bono organizations from assisting individuals and small businesses, so too would denial discourage third parties from helping those with lesser resources. In this case, for example, Caspian may have been less inclined to pay the litigation costs of its employees had it known that it could not recover those fees either directly as a co-litigant or indirectly through a fee award to Morrison. Alternatively, it may have required Morrison to pay advance consideration in exchange for the company's agreement to pay his fees. Either way, "the denial of attorney fees would reintroduce the cost of litigation as a factor in [Morrison's] decision whether to contest governmental action [he] deems unreasonable." *Wilson*, 126 F.3d at 1411; *see also Comserv*, 908 F.2d at 1415-16 (noting that the material inquiry is not whether the litigation costs were paid by someone other than the litigant, but rather, whether "the burden of attorneys' fees would have deterred [the litigant from bringing] the litigation challenging the government's actions").

In addition, the denial of fees in this case, like the denial of fees in *Wilson*, would provide an incentive for the IRS to deny administratively and then unreasonably litigate meritorious claims. *Id.* at 1410. Whenever the IRS knew that an individual or small business had a third-party backer, it could reject the petitioner's claim and litigate any appeal "without

any pecuniary risk." *Id.* In other words, the fact that a third-party had chosen to help an individual taxpayer would generate a windfall for, and encourage non-meritorious litigation by, the IRS. This outcome runs directly counter to one of the principal goals of § 7430: the "deter[rence of] abusive actions and overreaching by the Internal Revenue Service . . ." H.R. Rep. No. 97-404, at 11 (1981).

Those courts that have denied fees to litigants with third-party backers have relied on a single rationale, the so-called "stand-in litigant" problem. *Comserv*, 908 F.2d at 1416 ("Focusing on deterrence sheds light on the problem of the 'stand-in' litigant who seeks fees under EAJA that, if received, would be passed on to an ineligible litigant."); *see also Unification Church v. INS*, 762 F.2d 1077, 1083 (D.C. Cir. 1985) ("The possibility of one client using another to obtain fees otherwise unavailable under the Act, absent in the cases involving legal-service organizations, is present here."). These cases reflect a concern that awarding fees to a petitioner whose fees have been paid by a third party will encourage "straw-man" litigation, in which a third party that does not qualify for an award will go in search of a plaintiff who does and bring suit in that person's name.[6] This fear is unfounded as applied to § 7430 generally and, more specifically, to the case before us.

---

[6]For example, in *Unification Church*, a church paid attorneys' fees on behalf of several of its employees who challenged the government's refusal to allow them to remain in the United States. 762 F.2d at 1079. The employees ultimately prevailed on appeal and moved for a fee award under EAJA. The court denied recovery. It concluded that the church was the real party in interest with regard to the fees, and, because its net worth exceeded the statutory limit, a fee award was inappropriate. *Id.* at 1092. In so holding, the court reasoned that, "[i]n a wide variety of circumstances, organizations obviously not qualified for an award [under EAJA's fee shifting provision] would be able to persuade individuals to be among the parties, and the organization would then receive free legal services if its side were to prevail." *Id.* at 1082.

As a preliminary matter, the party seeking recovery of attorneys' fees under § 7430 has been specifically selected by the IRS for an audit. In other words, the litigation that generated the attorneys' fees was initiated, at least in the first instance, by the government, not by the party who later prevailed and sought fees. The government identified the target, not any third party. The risk that awarding fees to a third party will create an incentive for fee-ineligible parties to bring litigation against the government through self-selected stand-in litigants is thus simply not present.

Furthermore, other safeguards built into § 7430 assure that any award of fees, once paid, will serve the statute's fee-shifting purposes even if that fee is later passed onto a third party. First and foremost, to qualify for a fee recovery, the small business or individual petitioner must be a "prevailing party," meaning that the taxpayer "substantially prevailed with respect to the amount in controversy, or . . . with respect to the most significant issue[s]." § 7430(c)(4)(A)(i). Second, fees are not available if the government can show that it was "substantially justified" in its position. § 7430(c)(4)(B)(i). Third, litigation costs may only be awarded if the petitioner has "exhausted the administrative remedies available . . . within the Internal Revenue Service." § 7430(b)(1). These requirements, combined, mean that a fee award will only be available if the IRS: (a) erroneously targeted an individual taxpayer or small business; (b) was not substantially justified in taking its incorrect position; and (c) failed to correct its error via its own internal procedures. In such a case, the public benefit that derives from successful litigation against the IRS remains substantial, obviating any need for an unduly narrow reading of the word "incurred." *See Jean*, 496 U.S. at 165 n.14 (noting that a "party who chooses to litigate an issue against the Government is not only representing his or her own vested interest but is also refining and formulating public policy" (internal citation and quotation marks omitted)).

**[5]** In addition, the specific facts of this case surely raise no "stand-in" litigant concern. Although Caspian was the subject

of a separate IRS investigation, it had no direct interest in the resolution of Morrison's related, but independent, petition. Furthermore, Caspian itself qualified for recovery under § 7430, so it did not need to use Morrison to circumvent the statute's financial limitations. To the contrary, by requiring that the IRS pay Caspian only its pro rata share of fees and not pay the rest of the fees to anyone, the Tax Court sanctioned a windfall to the IRS because of the manner in which the parties arranged for payment of fees. These facts, combined with the general differences between tax litigation and other litigation against the government, dispel any concern that Caspian was motivated by an improper purpose in choosing to advance fees on Morrison's behalf. We therefore find no reason to deny Morrison recovery of attorneys' fees, provided that he remained at least contingently liable for repayment to Caspian.

In sum, we agree with those courts that have awarded attorneys' fees to individuals and small business litigants even where a third party paid those fees and the litigant's obligation to repay was contingent on his recovery under the statute. Such a rule encourages third parties to help taxpayers vindicate their rights and avoids creating an incentive for the IRS to deny meritorious claims. This reasoning applies with special force in situations, such as here, in which the third-party backer is itself a small business that meets § 7430's financial requirements.

[6] We therefore hold that when a third party who has no direct interest in the litigation pays fees on behalf of a taxpayer, the taxpayer "incurs" the fees so long as he assumes: (1) an absolute obligation to repay the fees, regardless of whether he successfully moves for an award under § 7430; or (2) a contingent obligation to pay the fees in the event that he is able to recover them under § 7430.[7]

---

[7]We do not decide whether there are circumstances in which a prevailing taxpayer who did not himself pay fees and is not liable for repayment of fees to a third party, contingently or otherwise, can nonetheless "incur" fees under § 7430 and become entitled to collect fees from the government.

### III.    Application to Morrison

On the record before us, we find it difficult to discern the exact nature of the agreement between Caspian and Morrison regarding the repayment of attorneys' fees, or even determine whether such an agreement exists.

At various times, Morrison asserted (1) that "under the arrangement pursuant to which CASPIAN paid [Morrison's] litigation costs, [Morrison] is obligated to pay over any recovery to CASPIAN"; (2) that "[a]s part of the consideration to be paid to [Morrison] by CASPIAN for the purchase of his stock, CASPIAN agreed to advance on behalf of [Morrison] the costs and fees incurred by [Morrison] in connection with this case," and "[Morrison] in exchange agreed to pursue the recovery of his litigation costs, and to pay over to CASPIAN any recovery of such costs"; (3) that the payment of fees by Caspian "were treated as loans to [Morrison]"; (4) that "CASPIAN's payment of [Morrison's] attorneys was part of an [arm's-length] business transaction in which the cost to CASPIAN of the payment was treated by the parties to the arrangement as part of the consideration paid to [Morrison]"; and (5) that Morrison "indirectly paid for the services of an attorney when CASPIAN assumed his share of the cost of the then pending tax disputes with Appellee as part of the consideration in the buy-out transaction."

The government and the Tax Court suggest that these statements are contradictory. We are not so sure. Although the statements are not models of clarity, they are all consistent with the idea that Caspian agreed to advance Morrison's attorneys' fees as consideration for the purchase of Morrison's Caspian stock, but that, as part of that agreement, Morrison agreed to repay any fees he recovered. Such an arrangement closely parallels the contractual arrangement in *Wilson*, where the petitioner paid insurance premiums in exchange for the insurance company's agreement to pay any potential attorneys' fees, but also agreed to seek recovery of those fees on

behalf of the insurance company. *See Wilson*, 126 F.3d at 1407-08. For the reasons outlined above, Morrison, like the petitioner in *Wilson*, would be entitled to attorneys' fees if he took on a contingent obligation to repay the fees to Caspian.

As the government points out, however, there is little direct evidence of the fee arrangement between Caspian and Morrison. Morrison submitted an affidavit from his attorney, William E. Taggert, in which Taggert asserted that the parties' joint engagement and disclosure agreement established the fee arrangement among the parties. Our independent review of the written agreement, however, reveals that it is silent on precisely how the payment and reimbursement of fees was to be handled. In addition, Morrison did not produce any documentary evidence of the stock-buyout agreement between himself and Caspian. It is therefore possible, though perhaps unlikely, that Morrison was under no obligation to repay any fee recovery to Caspian.[8]

[7] Because the Tax Court took the view that a litigant can *never* "incur" fees if the fees are first paid by a third party, it did not sort out the precise nature of the relationship between Caspian and Morrison, and so did not determine whether Caspian agreed to pay some or all of Morrison's fees as consideration for an earlier transaction, or whether Morrison assumed a contingent or noncontingent repayment obligation. We therefore remand to the Tax Court to apply the definition we have adopted of "incurred," after determining the precise nature of the fee agreement, if any, between Caspian and Morrison.

---

[8]Even if Morrison was not obligated to repay any fee recovery to Caspian, he might still qualify for a fee award if he paid full consideration in exchange for Caspian's agreement to pay his fees. In such a case, the consideration paid by Morrison could amount to a prepayment of his attorneys' fees. He would therefore have "paid" attorneys' fees under § 7430. Of course, Morrison would be entitled to, at most, only the amount of consideration he pre-paid.

## IV.   Conclusion

In sum, we hold that the Tax Court applied the wrong legal standard when it determined that Morrison did not "incur" attorneys' fees simply because it was Caspian who paid Morrison's fees in the first instance. We reverse and remand for further proceedings.

**REVERSED and REMANDED.**