T.C. Memo. 2011-76


UNITED STATES TAX COURT


BRADLEY K. MORRISON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]


Docket No. 18140-03.                    Filed April 4, 2011.


<u>William E. Taggart, Jr.</u> and <u>Barbara N. Doherty</u>, for
petitioner.

<u>Patricia Montero</u>, for respondent.


SUPPLEMENTAL MEMORANDUM OPINION

VASQUEZ, <u>Judge</u>:  This case is before the Court on remand
from the U.S. Court of Appeals for the Ninth Circuit for further
consideration consistent with its opinion in <u>Morrison v.</u>

---

[*] This opinion supplements our prior opinion, <u>Morrison v.
Commissioner</u>, T.C. Memo. 2006-103.

<u>Commissioner</u>, 565 F.3d 658 (9th Cir. 2009), revg. and remanding T.C. Memo. 2006-103. After concessions,[1] the issue for decision on remand is whether petitioner incurred attorney's fees.[2] We hold that he did not.

## Background

We summarize relevant background from <u>Morrison v. Commissioner</u>, <u>supra</u>, and set forth additional details for purposes of deciding the issue on remand. At all relevant times petitioner Bradley K. Morrison resided in Belmont, California.

During 1999 and 2000 petitioner and Nariman Teymourian (Teymourian) owned 40 percent and 60 percent of Caspian

---

[1] Respondent concedes that petitioner is a prevailing party, that he exhausted all administrative remedies available, and that he meets the net worth requirement of sec. 7430. In addition, pursuant to the stipulation of settled issues filed with the Court on May 4, 2010, petitioner's claim is limited to those costs and expenses, if any, he incurred on or after Apr. 5, 2004, which was the date of his qualified settlement offer. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] The Court of Appeals in its opinion noted the possibility that petitioner may have "paid" attorney's fees if we find that he paid full consideration in exchange for Caspian's agreement to pay his fees. See <u>Morrison v. Commissioner</u>, 565 F.3d 658, 667 n.8 (9th Cir. 2009), revg. and remanding T.C. Memo. 2006-103. Petitioner does not make this argument on brief, and we find nothing in the record to support it.

In addition, respondent argues that petitioner unreasonably protracted the proceedings and that, in the event petitioner is entitled to recover fees, he is not entitled to recover fees at an enhanced rate. In the light of our holding that petitioner did not incur litigation costs, we find it unnecessary to address respondent's additional arguments.

Consulting Group, Inc. (Caspian), respectively. Petitioner served as Caspian's vice president of engineering and also was employed in a technical capacity.

In 2001 the Internal Revenue Service (IRS) began an audit of Caspian's 1999 and 2000 income tax returns. Its examination soon expanded to include separate audits of petitioner's, Teymourian's, and Teymourian's wife's personal tax returns for the same period. Each of the four taxpayers was represented by the law firm Taggart & Hawkins (counsel). Caspian paid the legal fees for all four taxpayers.

In 2002, in the midst of the IRS' examinations, petitioner sold his stock in Caspian back to Caspian pursuant to a stock buyout agreement (the buyout agreement) prepared by counsel.[3] Petitioner also resigned from his position as vice president of engineering and as an employee of Caspian, leaving Teymourian as the sole owner of Caspian. The IRS' examination of petitioner's returns did not end with the sale of his Caspian stock.

The taxpayers executed an engagement letter (i.e., written disclosure agreement) with counsel dated October 4, 2002.[4] The principal reason for the letter was to advise the taxpayers of

_____

[3] The buyout agreement states that its effective date was Sept. 10, 2002.

[4] The engagement letter was signed and dated by Caspian, Teymourian, and Teymourian's wife on Apr. 24, 2003, and by petitioner on May 9, 2003.

the potential conflicts of interest that could arise from counsel's joint representation of them. The letter specifically stated that counsel could not provide an accurate estimate of the fees and costs likely to be incurred.

On July 24, 2003, respondent issued a statutory notice of deficiency to petitioner for 1999 and 2000. Respondent also issued notices of deficiency to Caspian and Teymourian for the same years.[5] Teymourian decided that the issues involved in all of the cases were important, and he wanted to ensure that the cases were properly handled. On October 22, 2003, petitioner timely filed a petition with the Court. After a trial on the merits the Court issued an opinion finding in favor of petitioner on the major issues in the case. See Morrison v. Commissioner, T.C. Memo. 2005-53.

Counsel represented petitioner throughout the IRS examination and Tax Court litigation, and Caspian continued to pay all of petitioner's legal fees, even though his relationship with Teymourian had soured and he was no longer associated with Caspian.

---

[5] Caspian and Teymourian petitioned the Tax Court and won favorable judgments. See Teymourian v. Commissioner, T.C. Memo. 2005-232; Caspian Consulting Grp., Inc. v. Commissioner, T.C. Memo. 2005-54. Respondent also determined deficiencies for 1999 and 2000 against Teymourian's wife because she had filed joint income tax returns with Teymourian. She filed a separate petition.

Petitioner filed a motion for award of litigation costs, which we denied.  See Morrison v. Commissioner, T.C. Memo. 2006-103.  We held that petitioner had not incurred litigation costs because a separate entity paid all costs in issue.  Petitioner appealed.  The Court of Appeals for the Ninth Circuit rejected our definition of "incur" as too narrow.[6]  After a discussion of the policy behind section 7430 and relevant caselaw, it held that when a third party who has no direct interest in the litigation pays fees on behalf of a taxpayer, the taxpayer "incurs" the fees so long as he assumes:  (1) An absolute obligation to repay the fees, regardless of whether he successfully moves for an award under section 7430; or (2) a contingent obligation to pay the fees in the event that he is able to recover them under section 7430.  Morrison v. Commissioner, 565 F.3d at 666.[7]

With respect to petitioner, the Court of Appeals found it "difficult to discern the exact nature of the agreement between Caspian and Morrison regarding the repayment of attorneys' fees, or even determine whether such an agreement exists."  Id.  Its

---

[6]  We defined "incur" for purposes of sec. 7430 as "to become liable or subject to:  bring down upon oneself."

[7]  The Court of Appeals articulated the test using similar language earlier in its opinion:  "We hold instead that a taxpayer can 'incur' attorneys' fees if he assumes either:  (1) a noncontingent obligation to repay the fees advanced on his behalf at some later time; or (2) a contingent obligation to repay the fees in the event of their eventual recovery."  Morrison v. Commissioner, supra at 662.

review of the written disclosure agreement (i.e., the engagement letter) revealed that it is silent on precisely how the payment and reimbursement of fees were to be handled.  The Court of Appeals stated:

> Because the Tax Court took the view that a litigant can never "incur" fees if the fees are first paid by a third party, it did not sort out the precise nature of the relationship between Caspian and Morrison, and so did not determine whether Caspian agreed to pay some or all of Morrison's fees as consideration for an earlier transaction, or whether Morrison assumed a contingent or noncontingent repayment obligation.  We therefore remand to the Tax Court to apply the definition we have adopted of "incurred," after determining the precise nature of the fee agreement, if any, between Caspian and Morrison.

Id. at 667.

On May 4, 2010, we held an evidentiary hearing to gather additional evidence needed to carry out the Court of Appeals' mandate.  Respondent and petitioner filed supporting briefs with the Court on August 3 and 4, 2010, respectively.[8]

## Discussion

Petitioner has the burden of establishing that all of the requirements of section 7430 have been satisfied.  See Rule 232(e); Minahan v. Commissioner, 88 T.C. 492, 496-497 (1987).  Accordingly, petitioner bears the burden of proving that he assumed an obligation to repay attorney's fees.

---

[8]  On Mar. 24, 2010, petitioner filed a motion for recovery of additional litigation costs for costs incurred after our May 15, 2006, Memorandum Opinion.  We shall deny that motion consistent with our findings in this opinion.

Petitioner argues that he had both an absolute and a contingent obligation to repay the fees. Respondent argues there is no evidence of an agreement to repay the fees under any circumstances.

Noncontingent Obligation

Petitioner argues that he was liable for the attorney's fees because he was ultimately responsible for them if Caspian could not pay. According to petitioner, this is because he was a party to the engagement letter, and counsel expected to be paid for the services provided. Petitioner also contends that counsel charged all of its time related to his case to him directly.[9]

The test articulated by the Court of Appeals is whether petitioner has an absolute obligation to repay Caspian; i.e., a present obligation that does not depend on a future recovery of fees, not whether he was obligated to pay counsel in the event Caspian failed to pay in the first instance. In other words, the relevant inquiry is whether petitioner is indebted to Caspian for the amounts Caspian paid to counsel on his behalf. Petitioner's argument focuses incorrectly on his supposed obligation to pay the fees to counsel directly "if Caspian failed to pay for such

---

[9] We note that there is no evidence that counsel charged petitioner directly. In fact, the Court of Appeals stated in its opinion that the "firm billed all of its hours to an account entitled 'Caspian,' and Caspian paid all of the associated fees." See Morrison v. Commissioner, 565 F.3d at 660.

services", rather than on an obligation to repay Caspian.[10]

Nothing in Teymourian's testimony supports the idea that he

expects Caspian to be reimbursed regardless of any recovery or

that petitioner assumed such an obligation.  There is simply no

evidence to support a finding that petitioner assumed an absolute

obligation to repay the fees Caspian advanced.

Contingent Obligation

Petitioner argues that he and Teymourian orally agreed as

part of the stock buyout agreement that Caspian would be entitled

to any recovery of litigation costs from respondent relating to

the litigation costs that Caspian paid on behalf of petitioner.

However, petitioner has introduced no evidence to support such an

oral agreement.[11]  In fact, Teymourian credibly testified that he

---

[10]  In addition, the eventuality petitioner invites us to consider is hypothetical in the extreme, considering Caspian did pay all the fees in the first instance.

[11]  Moreover, par. 14 of the buyout agreement states:

This AGREEMENT supersedes any and all agreements, either oral or written, between the Parties hereto with respect to the subject matter hereof.  Each Party to this AGREEMENT acknowledges that no representations, inducements, promises, or agreements, written or oral, have been made by any Party, or anyone acting on behalf of any Party, which are not embodied herein, and that no other agreement, statement, or promise not contained in this AGREEMENT shall be valid or binding with respect to the subject matter hereof.  Any modification or amendment of this AGREEMENT shall be effective only if such modification or amendment is in writing and signed by the Party to be charged with such modification or amendment.

does not recall discussing the issue with petitioner.

Specifically he said:

> Yes, I don't, I--my understanding, I never discussed with * * * [petitioner] whether or not--what would happen. I don't recall whether or not I've had a discussion with him in terms of recovery of the fees, what would happen to the proceeds.  My assumption was, since Caspian was paying for it, Caspian was going to be reimbursed.  That was my assumption * * *  But I don't recall ever having a direct conversation with Brad about it, to be honest with you.

We do not know what petitioner agreed to, if anything, since he did not testify at the hearing.  Teymourian simply assumed that Caspian would be entitled to a recovery of attorney's fees because Caspian paid them.  We do not equate Teymourian's assumption with an obligation assumed by petitioner.

Petitioner did not highlight any specific language in the stock buyout agreement that would prove he assumed an obligation. Our review of the agreement reveals that it is silent on the precise nature of how the payment and reimbursement of fees was to be handled, as is the engagement letter.  The stock buyout agreement does not include a provision for the repayment of

attorney's fees.[12]  Petitioner did not enter into any written agreement for the repayment of attorney's fees.

Since we do not find an agreement in the stock buyout agreement and petitioner did not testify, we are limited to Teymourian's testimony.  Teymourian testified that he:

> was worried that * * * [petitioner] would not be willing to or wouldn't be able to pay the legal fees that was [sic] necessary, and I wanted to make sure that we are [sic] successful in the outcome of the trial, and that I, you know, I--therefore we decided that it was the right thing to do to pay for all the legal fees and do that.

It appears to us that Teymourian unilaterally decided that Caspian would pay petitioner's attorney's fees, and there was no quid pro quo affecting this strategic decision.[13]  Thus, we find on the facts of this case that petitioner did not assume a contingent obligation to repay the fees to Caspian.

---

[12]  In fact, par. 8 thereof states, in pertinent part:

> BUYER shall indemnify and hold harmless SELLER from and against any and all claims, liability, damages, costs and expenses (including without limitation, attorneys fees and costs) arising from, or in any way related to, the ownership, operation, management or business of BUYER on account of events which occur subsequent to July 1, 2002.

[13]  In addition, there is no evidence that Caspian was helping a party with lesser resources or that Teymourian would have been less inclined to cause Caspian to pay the litigation costs of its employee had he known that he could not recover those fees.  Nor is there evidence that the burden of paying legal fees would have deterred petitioner from challenging respondent's determinations himself.  The Court of Appeals highlighted these factors as driving the policy behind sec. 7430 and the test it articulated.

## Conclusion

On the basis of the foregoing, we find that petitioner has not met his burden of proving that he assumed either an absolute obligation or a contingent obligation to repay attorney's fees. Accordingly, petitioner did not incur attorney's fees, and his motions will be denied.

In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

An appropriate order and decision will be entered.